Dale Wayne FRALEY, Appellant,

v.

Gail Ann RICE–FRALEY, Appellee.

No. 2009–CA–002167–ME.

Court of Appeals of Kentucky.

May 7, 2010.

Matthew R. Walter, Danville, KY, for appellant.

Fred S. Bachmeyer, Lexington, KY, for appellee.

Before MOORE and THOMPSON, Judges; WHITE,[1] Senior Judge.

*OPINION*

MOORE, Judge.

Dale Wayne Fraley appeals the Domestic Violence Order (DVO) that was entered by the Bourbon Family Court. After a careful review of the record, we reverse because the family court abused its discretion in entering the DVO.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Gail Ann Rice–Fraley moved for an emergency order of protection against Dale, and her motion was granted. She then filed a domestic violence petition, alleging that she feared for her safety due to Dale's

actions and inability to be reasonable. He has a drug addiction problem that is more severe than what he led me to believe before we were married. Although he has been in an[d] out [of a] patient treatment program, I think his perception of what is normal thinking and behavior is severely damaged and perhaps cannot be corrected. I met with a marriage counselor. . . . When I explained to the counselor how Dale interprets things I say into things not possible and there is no convincing him otherwise; Dale was described as being a dangerous person. She explained to me that what I experienced with him . . . when he did not have . . . painkillers that he has a severe or heavy addiction problem. She told me to divorce him as soon as possible, run, get away from him that he is dangerous. She said he is a sociopath and "I don't think he's going to kill you right now but you need to run." Apparently Dale's jealousy issues along with the addiction and damage categorizes him as a sociopath. . . .

In addition, the marriage counselor said this was a man with no conscience. Due to the above events, I have received 100+ calls from this person and chose to speak to [him one] time after the counseling appointment.

A hearing was held, in which the parties both proceeded *pro se*.[2] The family court explained to the parties that it was a civil proceeding, rather than a criminal proceeding, and that the burden of proof Gail had to meet for the DVO to be entered was whether it was "more likely than not, or what we call a preponderance of the evidence."

The court then asked Gail if she was in fear that Dale might harm her, and Gail responded affirmatively. However, the

---

1. Senior Judge Edwin M. White, sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statute(s)(KRS) 21.580.

2. A woman stood at the podium next to Gail, but the woman never provided her name, did not speak to the court, and was not sworn in. Therefore, we are uncertain who she was, but she did whisper some things to Gail during the proceedings which were inaudible on review of the hearing.

court asked whether, since they were married ten months earlier, and even prior to that time, Dale had conducted himself in a way that made Gail fear for her safety, and Gail said "not for my safety." Gail said that she and Dale would argue over things that had no substance, and she felt that Dale was being unreasonable and that he had a lot of jealousy issues. The family court asked Gail whether there had been a time other than what she had written in her domestic violence petition when she had been fearful of him. She responded in the negative, explaining that she did not feel fearful, but she questioned how far his actions could go if he was so persistent that he wanted answers. Gail gave an example of an instance that occurred before they were married ten months earlier in which Dale could not get in touch with her by telephone because she was asleep. So, he drove to her home and let himself in with the key she had given him. Gail then awoke at 1:00 in the morning with Dale walking into her bedroom. The court asked: "Did that unnerve you? Make you fearful?" Gail responded by stating that it made her question how far his persistence would go. The court asked whether, if the court did not give her a protection order, she would feel unsafe, and Gail answered "yes."

Gail told the court that the one visit she made to the marriage counselor (whom she visited alone, and whom Dale never visited) made her realize that he was a sociopath and what it meant to be a sociopath. She said that unnamed friends in the past had told her that one day they were going to read about her in the papers, based on how Dale talked to her, how persistent he was and the fact that he would get angry if he could not get in touch with her by

telephone while she was at work and at other times.

The court asked whether Dale had said anything about them getting divorced. Gail said Dale had told her that if she felt divorce was the best for the both of them, he would agree to it. However, Gail also testified that Dale had left letters in her mailbox saying she would not "get off that easy." Dale's letters were submitted to the court, and the court asked Gail if she recognized his handwriting in the letters, to which Gail responded affirmatively.[3]

One of Dale's letters stated as follows: Hi Gail. It's 1:00 in the morning[.] I could tell you were out. I guess you will try and get me to believe you spent the night with John or something. Well, I'll see you in the morn[ing] or tomorrow night or sometime [illegible]. If you could just quit lying to me. [sic] I could put this in place[.] [W]e will see what you say. The truth would help[.] I'm going to have it all figured out soon. Have a [expletive] good time. I knew it. Your husband. I knew something wasn't right.

Dale's other letter began by apologizing to Gail for thinking that "another man might have anything to do with what [was] happening to" their relationship. He explained that the reason he questioned whether she had been faithful to him was because of the way she had handled the situation between them—by not letting him come home, being "cold" towards him, refusing to speak with him about the situation, and being reluctant to tell him that the situation between them had nothing to do with another man. Dale's letter primarily involved his repeatedly expressing his love for Gail and apologizing for think-

---

3. Two letters written by Dale were submitted as part of the record on appeal. However, upon reviewing the record, we did not find any language in those letters saying that Gail would not "get off that easy."

ing that she was cheating on him. He also stated: "I will not sign any divorce papers anytime soon until I'm positive that we have no chance. I don't take this commitment lightly." Furthermore, Dale's letter stated: "I thought marriage counciling [sic] might help like we talked, but then you tell me she only councils [sic] one spouse."

After the letters were admitted in court, a woman in the back of the courtroom, who was not sworn in, and who did not provide her name, stood up and told the court that Gail had previously telephoned a crisis line with the Bluegrass Domestic Violence Program "regarding these same issues" prior to court. The woman did not specify to which issues she was referring. The court responded "okay," but the court did not admonish the woman that she had to be sworn in or that the court could not consider her statement because she was unsworn and had not provided her name.

Dale submitted a letter from his doctor, Piotr Zieba, M.D., at Central Kentucky Psychiatry, stating: Dale had "been in opiate dependency treatment [for the past seven months]. Mr. Fraley has attended every appointment and has followed treatment as directed. Mr. Fraley has passed his drug tests and is doing well in the program."

Dale also submitted a letter from Dr. Zieba that stated as follows:

> Mr. Dale Fraley has been under my care since March 18, 2009. Mr. Fraley has expressed concerns about his marriage in his visits. On September 23, 2009, Gail Fraley, Mr. Fraley's wife[,] accompanied him to his appointment. I suggested marriage counseling and referred the couple to a counselor. The couple reportedly did not see this counselor.
>
> Mrs. Gail Fraley states in an Emergency Protection Order she sought counsel-

ing and was advised her husband had antisocial tendencies. However, Mr. Fraley is compliant with his treatment. He does not show any antisocial tendencies while in treatment.

Gail informed the family court that Dale had previously told her that he only spent about ten minutes at the doctor's office each time he was there, so she doubted the doctor could have accurately made that assessment regarding his antisocial tendencies. Ironically, Gail failed to note that her "marriage counselor," who opined that Dale was sociopathic, never actually met or spoke with Dale; yet Gail felt that Dale's medical doctor, who had met Dale and spoken with him repeatedly during his treatments, did not know Dale well enough to form an opinion regarding his antisocial tendencies.

When Dale was permitted to speak, he asked who the marriage counselor was with whom Gail had met because Dale contended that the counselor never interviewed him, despite providing an opinion concerning his mental health. Gail asked the court whether she had to reveal the name of the counselor. Gail said the counselor had told her the things Gail wrote in her statement in support of her domestic violence petition. After meeting with the counselor the first time, Gail had told Dale that she met the counselor. Dale told Gail he wanted to go see the counselor to provide his side of the story. However, Gail informed the court that she was under the impression that the counselor did not want Dale "there." Therefore, the court informed Dale that it was not going to force Gail to reveal her counselor's name.

Dale asked Gail why she feared him, as he was not violent, he had never called her a bad name, and he never had committed an act of domestic violence. The court asked Gail why she was fearful of Dale, and Gail said it was because she had pro-

fessionals who had told her she needed to "open her eyes and see what was going on." She said the one session with the counselor, who also "does psychotherapy" turned "the light on for" her. Gail also said there was an instance when she and Dale were arguing and she began to feel ill from the stress of the argument, so she asked him to leave. Dale's suitcase was in the hall sitting next to the telephone. After he left and took his suitcase with him, Gail discovered that the telephone had been unplugged. Gail opined that Dale had to have purposely unplugged the telephone because if the telephone had been unplugged simply by him moving the suitcase, damage would have been done to the box into which it was plugged. Gail said the marriage counselor opined the telephone was unplugged because Dale did not want her to have outside contact. The court asked if that was why she was fearful, because of what happened that day. Gail responded in the affirmative.

Dale argued that the professional counselor did not know him. The court replied: "Right, and ... I cannot consider what they have said. I will not consider what they have said. I can only consider the impact it's had on her thinking."

The court then stated that, based on the hearing and the letters that Dale had written to Gail, the court found that there was reason to believe domestic violence or abuse had occurred and may occur again in the future if the court did not enter the DVO. The court explained to Dale that the term "domestic violence" includes conduct that causes someone to fear for their safety. The court explained to Dale that domestic violence, therefore, could be words, it could be sending flowers to someone that causes someone to be unnerved, and it could be driving by someone's house. The court told the parties to have no contact with each other.

Dale now appeals, contending that: (a) the family court abused its discretion in applying an incorrect definition of "domestic violence"; (b) the family court abused its discretion by allowing an unsworn, unidentified person to interject in the proceedings; (c) the family court abused its discretion when it allowed the admission of hearsay statements set forth in the domestic violence petition; (d) the court abused its discretion in considering the impact of alleged hearsay statements upon Gail; and (e) the court clearly erred when it found that it was established, by a preponderance of the evidence, that an act of domestic violence or abuse had occurred and may occur again.

## II. STANDARD OF REVIEW

This Court has previously noted that, pursuant to CR [4] 52.01,

> a trial court's findings of fact may be set aside if clearly erroneous. However, we are mindful that in reviewing the decision of a trial court the test is not whether we would have decided it differently, but whether the court's findings were clearly erroneous or that it abused its discretion.... Abuse of discretion occurs when a court's decision is unreasonable or unfair.

*Gomez v. Gomez,* 254 S.W.3d 838, 842 (Ky. App.2008). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Goodyear Tire and Rubber Co. v. Thompson,* 11 S.W.3d 575, 581 (Ky.2000).

## III. ANALYSIS

### A. CLAIM REGARDING DEFINITION OF "DOMESTIC VIOLENCE"

■ Dale first argues that the family court abused its discretion in applying an

---

4. Kentucky Rule(s) of Civil Procedure.

incorrect definition of "domestic violence." Specifically, Dale contends that when the family court noted during the hearing that someone being fearful of another person constitutes domestic violence, the court failed to note that such fear must be imminent and must be inflicted by the respondent to the petition. Dale asserts that the court never addressed whether Gail's fear was imminent and that all of the alleged fears Gail claimed to have stemmed from things her marriage counselor told her, rather than from things Dale said or did.

> Before issuing a domestic violence order, the trial court must first conduct a hearing and find by a preponderance of the evidence "that an act or acts of domestic violence and abuse have occurred and may again occur...." KRS 403.750(1). The preponderance of the evidence standard is met when sufficient evidence establishes that the alleged victim was more likely than not to have been a victim of domestic violence.

*Gomez,* 254 S.W.3d at 842 (internal quotation marks omitted).

Pursuant to KRS [5] 403.720(1), " 'Domestic violence and abuse' means physical injury, serious physical injury, sexual abuse, assault, or the *infliction of fear of imminent physical injury,* serious physical injury, sexual abuse, or assault between family members or members of an unmarried couple[.]" Further, KRS 403.720(2) states that a spouse is included in the definition of the term "family member." For purposes of KRS 403.720, the term " '[i]mminent' means impending danger, and, in the context of domestic violence and abuse ...[,] belief that danger is imminent can be inferred from a past pattern of repeated serious abuse." KRS 503.010(3).

In the present case, Gail contradicted herself multiple times in the hearing, stating at times that she was not fearful of

Dale and that she did not worry about her safety, and at other times stating that she would feel unsafe if the court did not enter a protection order. Nonetheless, she never alleged that Dale had acted violently toward her in the past, had injured her, or had threatened violence in any way. She based her alleged fear of Dale on her marriage counselor's uninformed opinion that Dale had sociopathic tendencies and on the fact that her counselor told her Dale had unplugged Gail's telephone to keep her from having outside contact. The family court properly stated that, under the circumstances of this case, it would not consider the opinions that the marriage counselor provided to Gail. However, the court stated that it would consider the "impact" of those opinions on Gail; the court erred in doing so.

It was the marriage counselor who instilled fear in Gail. There were no allegations or evidence that Dale had ever acted violently toward Gail or threatened violent actions toward her. Consequently, the family court erred in finding that the circumstances of this case met the definition of "domestic violence and abuse" because there was no evidence that Dale inflicted the fear of imminent physical injury on Gail. Thus, the family court abused its discretion in entering the DVO against Dale in this case.

## B. CLAIM REGARDING UNSWORN, UNIDENTIFIED PERSON

Dale also contends that the family court abused its discretion by allowing an unsworn, unidentified person to interject in the proceedings. He is referring to the woman from the back of the courtroom who stood up during the proceedings and briefly told the court that Gail had previ-

---

**5.** Kentucky Revised Statute(s).

ously telephoned a crisis line with the Bluegrass Domestic Violence Program "regarding these same issues" prior to court. The woman did not specify to which issues she was referring, or what, exactly, Gail had said during that telephone call to the crisis line. The court responded "okay," but the court did not admonish the woman that she had to be sworn in or that the court could not consider her statement because she was unsworn. Dale argues that the woman's statement served to improperly bolster the testimony provided by Gail and that this constituted substantial error pursuant to CR 61.02.

Civil Rule 61.02 states: "A palpable error which affects the substantial rights of a party may be considered by the ... appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error." Because Dale did not object to the woman's statement during the hearing, we may only review this claim under the palpable error standard set forth in CR 61.02.

■ "[T]he task of the appellate court in review under CR 61.02 is to determine if (1) the substantial rights of a party have been affected; (2) such action has resulted in a manifest injustice; and (3) such palpable error is the result of action taken *by the court.*" *Childers Oil Co. v. Adkins,* 256 S.W.3d 19, 27 (Ky.2008) (emphasis added). In the present case, although it was improper for the woman to stand up and interject her statement in the middle of the hearing without first being sworn, this was not an action taken by the court. We believe the court should have admonished the woman for making this statement in this manner and that the court should have stated that it would not consider her state-

ment in rendering its decision. However, in this case, we do not find that this error resulted in a manifest injustice to Dale. Therefore, this claim is without merit.

## C. CLAIM REGARDING ADMISSION OF HEARSAY STATEMENTS

■ Dale next alleges that the family court abused its discretion when it allowed the admission of hearsay statements set forth in the domestic violence petition. The hearsay statements to which he is referring were the statements allegedly made by the marriage counselor. However, because the family court stated that it was not going to consider the marriage counselor's statements, it appears that the court remedied the situation, and no error occurred.

## D. CLAIM REGARDING COURT'S CONSIDERATION OF IMPACT OF HEARSAY STATEMENTS UPON GAIL

Dale next asserts that the family court abused its discretion in considering the impact of alleged hearsay statements upon Gail. As we stated previously, the court erred in considering the impact of the counselor's statements upon Gail, particularly considering that it was the counselor's statements, rather than Dale's actions or spoken words, that created Gail's alleged fear.

## E. CLAIM THAT FAMILY COURT ERRED IN FINDING THAT AN ACT OF DOMESTIC VIOLENCE OR ABUSE HAD OCCURRED AND MAY OCCUR AGAIN

Finally, Dale alleges that the family court clearly erred when it found that it was established, by a preponderance of the

evidence, that an act of domestic violence or abuse had occurred and may occur again. As we stated previously, the family court erred in this finding and, therefore, the court abused its discretion in entering the DVO against Dale.

Accordingly, the order of the Bourbon Family Court is reversed.

ALL CONCUR.