RENDERED:  AUGUST 13, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1417-MR

LOLA MOLNAR                                                    APPELLANT

v.
APPEAL FROM FAYETTE CIRCUIT COURT
HONORABLE JULIE MUTH GOODMAN, JUDGE
ACTION NO. 20-CI-00166

TACK HOUSE PUB, LLC                                            APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  COMBS, KRAMER, AND L. THOMPSON, JUDGES.

KRAMER, JUDGE:  Lola Molnar appeals two orders of the Fayette Circuit Court

– the first of which dismissed her premises liability action against the appellee,

Tack House Pub, LLC, based upon limitations; and the second of which denied her

motion to amend her complaint in this matter.  Upon review, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

On January 15, 2020, Molnar filed suit against Tack House in Fayette Circuit Court, alleging she had sustained injuries in a fall on its premises on September 4, 2018, and that her injuries were attributable to its negligence. Tack House answered; it denied liability and shortly thereafter moved to dismiss Molnar's suit on limitations grounds pursuant to CR[1] 12.02.  Specifically, Tack House noted the one-year limitations period set forth in KRS[2] 413.140(1)(a)[3] applied to Molnar's injury claim; and that January 15, 2020 – the date Molnar initiated her suit – was well beyond one year after September 4, 2018.  Thus, from the face of Molnar's complaint, Tack House argued Molnar's suit was time barred.

Elsewhere in its motion, however, Tack House also indicated it had contacted Molnar about what it believed was the untimeliness of her claim; that Molnar had disagreed based upon a December 17, 2019 letter she had received from Tack House's insurer, Grange Insurance Company; and, that it anticipated Molnar would seek to avoid the effect of KRS 413.140(1)(a) based upon Grange's letter.  The letter, which Tack House attached as an exhibit to its motion to dismiss, provided in relevant part:

---

[1] Kentucky Rule of Civil Procedure.

[2] Kentucky Revised Statute.

[3] KRS 413.140(1)(a) provides: "(1) The following actions shall be commenced within one (1) year after the cause of action accrued:  (a) An action for an injury to the person of the plaintiff, or of her husband, his wife, child, ward, apprentice, or servant[.]"

> After careful consideration of the facts of this loss, it is our position that our insured [Tack House] is not legally responsible. In the absence of legal liability, we would not be justified in making any payment; accordingly, we must deny this claim.
>
> *The statute of limitations ran on 09/04/2019. The time period to file a lawsuit will be extended 30 days from the date you receive this letter*.

(Emphasis added.)

Citing the above-italicized language of the letter, Tack House then proceeded to argue this letter had *not* "extended" Molnar's "time period to file a lawsuit" to January 15, 2020 – a date undisputedly "30 days from the date [Molnar] received this letter" – and that accordingly Molnar's suit should nevertheless be dismissed on the basis of KRS 413.140(1)(a).

We pause here for a moment. Before discussing the substance of Tack House's preemptive rebuttal to an argument Molnar had yet to raise, it is helpful to first put into context (1) *what* Molnar's argument regarding this letter was; and (2) *why* Grange wrote this letter to Molnar.

As to the *what*, Molnar asserted Grange's December 17, 2019 letter had formed the basis of the type of "agreement" described in KRS 413.265. In her response to Tack House's motion, Molnar summarized her argument in relevant part as follows:

KRS 413.265 unambiguously allows for this suit to proceed. In its entirety, KRS 413.265 states: "Written agreements entered into in good faith and at arms length to extend limitations periods for the filing of civil actions, including agreements entered into prior to July 15, 1988, shall be valid and enforceable according to their terms."

*Why* Grange wrote this letter to Molnar is somewhat complicated. There is no dispute that Tack House timely notified Grange as to Molnar's potential claim and that Grange thereafter acted on Tack House's behalf for purposes of communicating with Molnar and negotiating the claim. And, after over a year had elapsed since the date of Molnar's alleged injury on December 17, 2019, as set forth in its letter, Grange's negotiating "position" with Molnar was that its insured, Tack House, was "not legally responsible." Nevertheless, Grange's stated intent – both in its letter, and according to what its designated representative attested to in a July 6, 2020 hearing before the circuit court in this matter – was to give Molnar the "gift" of an additional "30 days from the date [she] receive[d] this letter" to file suit against its insured, Tack House.

From all appearances of the record, Grange did this purely out of self-interest: Grange believed it had committed a violation of a Kentucky insurance regulation during its negotiations with Molnar regarding her claim;[4] and, when

---

[4] Because the substance of this regulation and as to why Grange thought it might be in violation of it have no bearing on this case, we will delve into it only as necessary for the benefit of context of the December 17, 2019 letter.

-4-

Grange sent Molnar the December 17, 2019 letter, it believed giving her the "gift" of an additional thirty days would remedy its perceived violation.

*After* it had already sent Molnar its December 17, 2019 letter, however, Grange correctly realized that it had not in fact committed a regulatory violation in regard to its negotiations with Molnar. But, in having tried to protect itself, Grange put its own insured in potential peril of liability for a stale claim. There is no indication from the record that Grange ever consulted with Tack House before it decided to make this "gift"; that Tack House ever consented to it; or that – at least until after Molnar filed suit in this matter – Grange explained to anyone why it had sent the December 17, 2019 letter. Indeed, Tack House has maintained in its pleadings, motions, and answers to Molnar's interrogatories that it was not aware of any communications between Grange and Molnar until after Molnar filed suit; and, in particular, that it was unaware of Grange's December 17, 2019 letter until Molnar presented it shortly after Tack House asked her for a voluntary dismissal.

With that explanation as to the *what* and the *why* of the December 17, 2019 letter, we turn back to the circuit court's dismissal of Molnar's action against Tack House. The court found that KRS 413.265 was inapplicable because: (1) no proof of record indicated Molnar had been induced to file suit outside of the applicable limitations period; and (2) in the circuit court's view, KRS 413.265 did

not authorize parties to contractually "extend" a statutory deadline that had already elapsed. In its September 30, 2020 order to that effect, the circuit court explained in relevant part:

> [T]here was no conduct by Grange or its employees that would indicate the Plaintiff detrimentally relied on any representations made to her prior to the expiration of the applicable statute of limitations. This Court determined from the record that there was no evidence of any detrimental reliance by the Plaintiff on any action by Grange or its employees prior to September 5, 2019. The Court believes it is significant that there is no evidence that Plaintiff detrimentally relied on any action of Defendant Tack House Pub, LLC or on any action of Grange or its employees.
>
> Plaintiff relies on KRS 413.265, the statute that allows for tolling agreements generally, to argue that the December 17, 2019 letter extended her limitations period. The December 17, 2019 letter was sent more than three months after the one-year period following Plaintiff's fall had passed. Thus, when the letter was sent to Plaintiff by Grange, there was nothing to extend because Plaintiff's time to file a claim had run. This Court finds that KRS 413.265 is clear and unambiguous. There is nothing in the plain language of KRS 413.265 that would allow this Court to conclude that Plaintiff's statute of limitations could be extended *after* it had expired. In reading the plain language of KRS 413.265, a tolling agreement to extend any statute of limitations can only be entered when there is actually something remaining that can be extended. In this instance, the statute of limitations had expired. Thus, there was nothing to extend.

This appeal followed.

## STANDARD OF REVIEW

Tack House's motion to dismiss was initially filed under the purview of CR 12.02, but it was effectively converted to a motion for summary judgment when the circuit court allowed discovery on and considered matters outside the pleadings. *See* CR 12.02; *McCray v. City of Lake Louisvilla*, 332 S.W.2d 837, 840 (Ky. 1960). "The standard of review on appeal when a trial court grants a motion for summary judgment is 'whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law.'" *Lewis v. B & R Corp.*, 56 S.W.3d 432, 436 (Ky. App. 2001) (citing *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996); *Palmer v. International Ass'n of Machinists & Aerospace Workers*, 882 S.W.2d 117, 120 (Ky. 1994); CR 56.03). "Because summary judgment involves only legal questions and the existence of any disputed material issues of fact, an appellate court need not defer to the trial court's decision and will review the issue *de novo*." *Lewis*, 56 S.W.3d at 436 (citing *Scifres*, 916 S.W.2d at 781; *Estate of Wheeler v. Veal Realtors and Auctioneers, Inc.*, 997 S.W.2d 497, 498 (Ky. App. 1999); *Morton v. Bank of the Bluegrass and Trust Co.*, 18 S.W.3d 353, 358 (Ky. App. 1999)).

## ANALYSIS

To review, Molnar's sole argument below in her various responses to Tack House's motion to dismiss was that her suit was timely. She argued that despite the preclusive effect of KRS 413.140(1)(a), the one-year period described in that statute had been effectively extended due to the formation of an "agreement" of the type specified in KRS 413.265, which provides:

> Written agreements entered into in good faith and at arms length to extend limitations periods for the filing of civil actions, including agreements entered into prior to July 15, 1988, shall be valid and enforceable according to their terms.

Conversely, Tack House's position, which the circuit court adopted, is that KRS 413.140(1)(a) applied because no such "agreement" existed. And, as to why no such agreement existed, the primary focus of the circuit court's ruling was upon the absence of any evidence indicating Molnar's failure to file suit within the requisite time period owed to detrimental reliance upon, or inducement from, Tack House or Grange.

On appeal, Molnar makes a somewhat contradictory argument regarding why, in her opinion, the circuit court erred in dismissing her suit. Specifically, in her appellate brief she argues "the general assembly intended for KRS § 413.265 to expand the *contract* rights of parties to a litigation." (Emphasis added.) And, she correctly notes in her brief that "[p]rior to the enactment of KRS

§ 413.265, it was 'against the public policy of this [s]tate for' a statutory limitation period 'to be extended by *contract*.'" (quoting *Lyons v. Moise's Ex'r*, 183 S.W.2d 493, 496 (Ky. 1944) (emphasis added). But in her reply brief, Molnar adds:

> KRS § 413.265 only requires a "written agreement" and does not specify that it requires a contract or consideration. KRS § 413.265. Arguably, it substitutes the requirements of (1) a writing, (2) that the agreement be reached at "arm's length[,]" and (3) in good faith for the ordinary requirement of consideration. This Court, in *Gibson v. EPI Corp.*, did not contemplate consideration for a hypothetical binding agreement in a very similar fact pattern. *Gibson v. EPI Corp.*, 940 S.W.2d 912 (Ky. Ct. App. 1997). This Court only hypothesized that parties would need to "memorialize" an agreement to extend the statute of limitations. *Id*. at 913. Surely Grange's letter, which includes the means of acceptance by its terms, is such a writing.

In sum, Molnar's argument is one of statutory interpretation, and our review is accordingly *de novo*. *Spencer Cty. Pres., Inc. v. Beacon Hill, LLC*, 214 S.W.3d 327, 329 (Ky. App. 2007). She contends that because KRS 413.265 does not specifically state that the "agreement" it envisions is a "contract" that requires "consideration," no consideration was required. Therefore, she contends, the circuit court erred in dismissing her suit based upon the absence of any evidence indicating her failure to file suit within the requisite time period owed to detrimental reliance upon, or inducement from, Tack House or Grange.

We disagree. To be sure, Molnar is correct that the word "agreement" in KRS 413.265 is not statutorily defined; and that the plain and ordinary meaning

of "agreement" is not necessarily "a contract." *See, e.g.*, *Agreement*, BLACK'S LAW DICTIONARY 67 (7th ed. 1999) (defining "agreement" as "[a] mutual understanding between two or more persons about their relative rights and duties regarding past or future performances; a manifestation of mutual assent by two or more persons.").

However, for purposes of interpretation, the language of a statute must be considered as a whole, rather than in a vacuum. *Cosby v. Commonwealth*, 147 S.W.3d 56, 58-59 (Ky. 2004). And, the "agreement" identified in KRS 413.265 – which must be "entered into," made in "good faith," "valid," and "enforceable" at law "according to [its] terms" – bears the hallmarks of an arrangement ordinarily viewed as a contract. *See, e.g.*, *Contract*, BLACK'S LAW DICTIONARY 318 (7th ed. 1999) (defining "contract" as "[a]n agreement between two or more parties creating obligations that are enforceable or otherwise recognizable at law[.]"); *see also Leslie v. LCA-Vision, Inc.*, No. 2009-CA-000899-MR, 2010 WL 2540169, at *2-3 (Jun. 25, 2010)[5] (applying rules of *contract* interpretation to an agreement entered into pursuant to KRS 413.265).

As for whether "consideration" was required, two more rules of statutory interpretation come into play. First, when interpreting a statute, words

---

[5] We deem *LCA-Vision, Inc.*, persuasive and believe it offers sound guidance on this issue consistent with the requirements of CR 76.28(4)(c).

-10-

are to be afforded their plain meaning unless doing so would lead to an absurd result or wholly unreasonable conclusion. *Cosby*, 147 S.W.3d at 59; *Kentucky Occupational Safety and Health Review Comm'n v. Estill Cty. Fiscal Court*, 503 S.W.3d 924, 929 (Ky. 2016). And second, "[w]e must presume the General Assembly was aware of the status of the law, including the common law," when it enacted KRS 413.265. *Garland v. Miller*, 611 S.W.3d 275, 279 (Ky. App. 2020).

With that said, prior to when KRS 413.265 was enacted in 1988, detrimental reliance – recognized by equity as a *substitute* for consideration[6] – had long been required for purposes of enforcing a promise to refrain from relying upon limitations as a defense. *See, e.g.*, *Carroll Cty. Mem'l Hosp. v. Yocum*, 489 S.W.2d 246, 248 (Ky. 1972) (explaining Kentucky courts have "emphasized . . . that the real inquiry should be whether the party against whom the statute was asserted was justified in relying upon the representations and activities of the insurance adjuster in delaying filing suit until time had run out[,]" and finding estoppel appropriate where the insurer had unequivocally agreed, prior to the expiration of the statutory period, to waive the statute of limitations for a reasonable time); *see also Miller v. Thacker*, 481 S.W.2d 19 (Ky. 1972) (holding that insurer was estopped from asserting a limitations defense where plaintiff failed

---

[6] *See McCarthy v. Louisville Cartage Co., Inc.*, 796 S.W.2d 10, 12 (Ky. App. 1990) (citations omitted) ("The whole theory of a promissory estoppel action is that detrimental reliance becomes a substitute for consideration under the facts of a given case. . . . Numerous oral and gratuitous promises have been enforced on this basis.").

-11-

to timely initiate suit in reliance upon the insurer's several misrepresentations of fact to plaintiff); *Cuppy v. Gen. Accident Fire & Life Assurance Corp.*, 378 S.W.2d 629, 630 (Ky. 1964) (refusing to apply equitable estoppel when the insurance agent merely stated "they would take care of everything"); *Pospisil v. Miller*, 343 S.W.2d 392 (Ky. 1961) (finding that estoppel did not apply based upon the insurance agent's representations that settlement would be reached after plaintiff had received all of her bills and physically recovered); *Chesapeake and N. Ry. v. Speakman*, 114 Ky. 628, 71 S.W. 633 (1903) (the defendant misled the plaintiff by promising compensation and then reversing its position once the statute of limitations had run).

Likewise, Molnar has misread *Gibson v. EPI Corp.*, 940 S.W.2d 912 (Ky. App. 1997), a case that undermines her argument, rather than assists it. There, this Court not only hypothesized that parties would need to "memorialize" an agreement to extend the statute of limitations made pursuant to KRS 413.265; we also noted such an agreement would have been necessary if, consistent with that appellant's argument, "her failure to comply with the applicable statute and Civil Rule was *induced* by statements of adjusters for appellees' insurance companies." *Id*. at 913 (emphasis added). Once again, this is an acknowledgement that a promise to extend a limitations period, to be enforceable within the context of KRS 413.265, requires either detrimental reliance or some other consideration.

*See Cooke v. Louisville Trust Co.*, 380 S.W.2d 255, 257 (Ky. 1964) (explaining a promise of forbearance from filing suit qualifies as consideration for a legally enforceable agreement); *see also Huff Contracting v. Sark*, 12 S.W.3d 704, 707 (Ky. App. 2000).

In short, interpreting the word "agreement" in KRS 413.265 consistent with Molnar's understanding of that statute would lead to an absurd result and wholly unreasonable conclusion: from a plain reading, nothing in KRS 413.265 evinces any intention to abrogate the existing common law necessity of either consideration or detrimental reliance to enforce an agreement to extend the applicable statute of limitations. We have found no Kentucky authority to the contrary, and Molnar presents none apart from her own interpretation of the statute. Accordingly, we discern no error in the circuit court's assessment that Grange's December 17, 2019 letter to Molnar – which undisputedly lacked consideration, and upon which Molnar (who had already missed the deadline for filing suit) could not have detrimentally relied – failed to qualify as an enforceable agreement pursuant to KRS 413.265.[7]

Next, Molnar argues Grange's December 17, 2019 letter could alternatively be construed as a common-law *waiver* of Tack House's right to assert

---

[7] Because we affirm on this basis and it is dispositive of this issue, we decline to review the argument as to whether parties may contractually extend a non-jurisdictional statutory deadline that has already lapsed.

the statute of limitations and that we could alternatively reverse the circuit court on that basis. Essentially, she argues that Grange's unilateral mistake of law, set forth in a letter it apparently never informed Tack House about, amounted to Tack House's "voluntary and intentional surrender or relinquishment of a known right, or an election to forego an advantage which [it] at [its] option might have demanded or insisted upon." *Barker v. Stearns Coal & Lumber Co.*, 291 Ky. 184, 163 S.W.2d 466, 470 (1942) (describing the essentials of a "waiver" theory).

However, as Tack House notes in its brief (and specifically in its request for this Court to strike this argument from Molnar's brief), "waiver" is a separate legal theory that Molnar never presented below. *See Regional Jail Authority v. Tackett*, 770 S.W.2d 225, 228 (Ky. 1989) (citations omitted) ("The Court of Appeals is without authority to review issues not raised in or decided by the trial court."). Moreover, despite her request for palpable error review of this new argument, Molnar's brief only offers the following explanation of how the circuit court's failure to address this theory, which she never raised, warrants relief under CR 61.02:

> [A]llowing an insurance adjuster to *get someone to file a lawsuit* by promising to extend the statute of limitations and then subsequently move to dismiss by asserting the statute of limitations as a defense would be a "manifest injustice."

(Emphasis added.)

-14-

For purposes of CR 61.02 review, the appellate court is required to determine whether the substantial rights of a party have been affected; and, if so, whether manifest injustice resulted. *See Fraley v. Rice-Fraley*, 313 S.W.3d 635, 641 (Ky. App. 2010). That said, Molnar fails to indicate what "substantial right" of *hers* was affected. Nor, for that matter, does Molnar explain how the circuit court's failure to *sua sponte* determine that Tack House had effectuated a binding waiver in this matter qualified as an error that "so seriously affected the fairness, integrity, or public reputation of the proceeding as to be shocking or jurisprudentially intolerable." *See Commonwealth v. Jones*, 283 S.W.3d 665, 668 (Ky. 2009) (explaining the requisites of "manifest injustice") (internal quotation marks and citations omitted). Accordingly, we decline to regard this argument as a basis for reversal or to review it further.

Lastly, Molnar takes issue with a second order the circuit court entered on September 30, 2020, which denied a motion she filed to amend her complaint in this matter. In the order, the circuit court concluded that the issues raised in Molnar's motion were moot because the "granting of [Tack House's] Motion to Dismiss disposed of all issues as no claim could be made as the one-year statute of limitations to bring a claim had expired before Plaintiff filed suit." We agree and affirm the circuit court's order.

-15-

## CONCLUSION

The extent of the arguments Molnar preserved for appeal fails to indicate the circuit court erred in dismissing her suit against Tack House. Accordingly, we AFFIRM.


ALL CONCUR.


BRIEFS FOR APPELLANT:

James M. Yoder
Lexington, Kentucky

Ryan D. Mosley
Prestonsburg, Kentucky

BRIEF FOR APPELLEE:

Melissa Thompson Richardson
Summer R. Bablitz
Lexington, Kentucky