RENDERED: DECEMBER 1, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1188-MR

JOANNE ERWIN                                                   APPELLANT

v.          APPEAL FROM ELLIOTT CIRCUIT COURT
            HONORABLE REBECCA K. PHILLIPS, JUDGE
            ACTION NO. 14-CI-00084

CORRECT CARE SOLUTIONS, LLC;
CORRECT CARE-INTEGRATED
HEALTH, INC.; KENTUCKY
ATTORNEY GENERAL; KENTUCKY
DEPARTMENT OF CORRECTIONS
LITTLE SANDY CORRECTIONAL
COMPLEX; LADONNA H.
THOMPSON, COMMISSIONER; AND
WARDEN JOSEPH MEKO, OFFICIAL
AND PERSONAL CAPACITIES                                        APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; ECKERLE AND KAREM, JUDGES.

THOMPSON, CHIEF JUDGE: Joanne Irwin ("Appellant") appeals from the final

judgment of the Elliott Circuit Court dismissing her claims arising from the loss of

her security clearance as a nurse at a state prison facility and subsequent termination from employment by her civilian employer. She argues that the circuit court erred in dismissing her claims against her former employers, Correct Care-Integrated Health, Inc. ("CCIH") and Correct Care Solutions, LLC ("CCS"), as well as those against the Kentucky Department of Corrections ("DOC") and Warden Joseph Meko. After careful review, we find no error and affirm the judgment on appeal.

### FACTS AND PROCEDURAL HISTORY

CCIH, and its successor entity, CCS, had contracts with the DOC to provide medical staff and healthcare to inmates at several correctional institutions in the Commonwealth, including Little Sandy Correctional Complex ("LSCC"). Meko was the Warden at LSCC at all relevant times. Appellant was a licensed practical nurse employed by CCIH, and later CCS, who was assigned to work at LSCC.[1]

According to Appellant, Warden Meko approached her at LSCC in February 2014, and struck up a brief conversation. She claims that he asked her how things were going in the medical department and if she needed anything. According to Appellant, Warden Meko then asked her if she would go out with

---

[1] CCIH's contract with the DOC terminated in February, 2014, at which time CCS contracted with the DOC to provide medical personnel and services. Appellant was employed first by CCIH, then CCS after the transition.

him after work for a drink some time. She claims that she replied, "no, thank you." Warden Meko denies that the conversation ever took place.

After the alleged conversation, Appellant continued to work uneventfully at LSCC for about two months. On April 16, 2014, Warden Meko terminated Appellant's security clearance based on three security infractions Appellant committed in the workplace. These infractions included giving a "honey bun" pastry to an inmate in October 2013; giving ChapStick[2] to an inmate the following month; and sometime thereafter, allowing an inmate to braid her hair. Appellant does not dispute that these incidents occurred, and that she met with Warden Meko in late 2013 to discuss them.

Appellant's clearance was required for the performance of her job duties at LSCC. Appellant perceived that the termination of her clearance by Warden Meko was retaliation for her declining to have a drink with him after work some two months earlier. She would later claim that immediately after the termination of her security clearance, she attempted to contact prison officials and her employer, but that both declined to take her calls. Appellant's employment with CCS was subsequently terminated as she was unable to perform her job

---

[2] For purposes of this appeal, the commercial name "ChapStick" is used to describe the lip balm Appellant gave to an inmate, which may not have been the ChapStick brand.

requirements without the security clearance.[3]

Thereafter, Appellant filed the instant action in Elliott Circuit Court setting forth claims of sexual harassment and hostile work environment; retaliation (KRS[4] 344.280); intentional infliction of emotional distress; age discrimination; conspiracy; and tortious interference with contract. She asserted that CCS and the DOC were her joint employers, thus making CCS liable for the alleged wrongful acts of Warden Meko.

The matter proceeded in Elliott Circuit Court, resulting in protracted litigation spanning several years. After discovery, the court determined that CCIH was not Appellant's employer at the time of her termination; that no proof was adduced that CCS knew or should have known of Warden Meko's alleged sexual harassment; and that, without such knowledge, CCS could not be liable for such misconduct or any retaliation based thereon. Accordingly, the court granted summary judgment in favor of CCIH and CCS.

In August 2021, the circuit court granted summary judgment in favor of Warden Meko on the claims of retaliation and intentional infliction of emotional distress/outrage. It reserved for later adjudication Appellant's claim of tortious

---

[3] The February 2014 conversation occurred while Appellant was employed by CCIH. The termination of her security clearance happened while she was employed by CCS.

[4] Kentucky Revised Statutes.

interference. In November 2021, it granted summary judgment in favor of Warden Meko on the tortious interference claim. Finally, in August 2022, the circuit court entered a final judgment dismissing all remaining claims and making final the summary judgment in favor of CCS.

As a basis for the interim and final judgments, the circuit court's analysis centered largely on the ChapStick, honey bun, and hair braiding incidents. The court noted that after the ChapStick and honey bun incidents, LSCC Internal Affairs investigated the matters and reported its findings to Warden Meko. Thereafter, Warden Meko met with Appellant on or about November 22, 2013, to discuss the matter. Warden Meko would later testify that he could have terminated Appellant's security clearance at any time based on the incidents, but chose not to do so because he thought the matter had been resolved. It was and remains the position of Warden Meko and the DOC that strict compliance is required regarding the rules addressing employee contact with inmates, because even minor rules violations can open the door to inmates gaining improper influence over staff members.

In its final judgment, the circuit court determined that the three incidents did occur, and that Appellant admitted their occurrence. It also found that the hair braiding incident occurred about one week prior to Appellant's second meeting with Warden Meko, at which time Appellant's security clearance was

terminated. The court concluded that these incidents formed a sufficient factual basis for rebutting Appellant's claim that the termination of her security clearance was retaliatory. This appeal followed.

## ARGUMENTS AND ANALYSIS

The Elliott Circuit Court granted summary judgment in favor of CCIH based on its finding that CCIH was not Appellant's employer at the time of her termination from employment. The court also dismissed CCS from the proceeding after concluding that CCS played no role in the sexual harassment, retaliation, and other torts allegedly committed by Warden Meko and the DOC. Appellant now argues that these rulings constitute reversible error. In support of this argument, Appellant contends that because she performed the same or similar services for each of the Appellees, she was a "joint employee" of CCIH, CCS, Warden Meko, and the DOC from the time Warden Meko asked her out for drinks until her termination from employment. The focus of her argument on this issue appears to be that since Appellees effectively acted in concert at all relevant times, they are jointly culpable for the civil wrongs she endured.

Appellant directs our attention to two unpublished Kentucky opinions,[5] which she argues stand for the proposition that two employers may be

---

[5] *Kentucky Integrated Electrical and Datacom v. Hussey*, No. 2008-SC-000031-WC, 2008 WL 5051632 (Ky. Nov. 26, 2008), and *Justice Cabinet, Department of Corrections v. Perkinson*, No. 2020-CA-1023-MR, 2022 WL 16703114 (Ky. App. Nov. 4, 2022).

-6-

liable for an injury to an individual who is under a contract with both employers, and under their simultaneous control. In *Hussey*, the Kentucky Supreme Court stated that,

> joint employment occurs when an employee is under contract to two employers, under their simultaneous control, and performing the same or closely-related services simultaneously for both. In such a case, both employers are liable for an injury that results from the employment. Dual employment occurs when an employee is under contract to two employers, under the separate control of each, performing largely unrelated services for each employer separately. In such a case, the employers are liable separately if the employee's activity at the time of the injury is severable but liable jointly if the activity is not severable.

*Hussey*, 2008 WL 5051632, at *3.

Appellant acknowledges that this issue is not preserved for appellate review, as her trial counsel focused solely on the employer at the time of her discharge from employment, *i.e.*, CCS. Accordingly, she seeks a palpable error review.

Appellant's argument centers on her contention that she was jointly employed by CCIH, CCS, Warden Meko, and the DOC at all relevant times, and that this joint employment brings with it joint culpability for the various torts alleged. We have closely examined the record and the law on this issue, and are not persuaded that Appellant was a "joint employee" per *Hussey*, *supra.*

The record demonstrates that Appellant's employment with CCIH began in 2012, at which time CCIH was under contract with the DOC to provide medical services and personnel to various prison facilities in the Commonwealth. CCIH's contract lapsed on February 28, 2014, and CCS entered into a new contract with the DOC the following day to provide the same or similar medical services and personnel. Appellant began her employment with CCS when CCS contracted with the DOC. Warden Meko allegedly asked Appellant to have a drink with him some time in February, 2014, which was during Appellant's employment with CCIH.

The Elliott Circuit Court found that Appellant was employed by CCIH until the end of February, 2014, and then employed by CCS beginning March 1, 2014. We find no error in this conclusion. Nothing in the record demonstrates that Appellant was "jointly employed" concurrently by CCIH, CCS, Warden Meko, and the DOC. The record does not support a conclusion that Appellant was employed under two or more simultaneous contracts with multiple employers. Rather, all of the evidence demonstrates that Appellant was employed by CCIH and then CCS during the terms of their respective contracts with the DOC.

Further, *Hussey* and *Perkinson* are distinguishable from the instant facts. In *Hussey*, a workers' compensation case, the Kentucky Supreme Court applied the joint employment doctrine to find joint liability where the plaintiff was

-8-

under contract simultaneous with two employers. Appellant herein was never employed simultaneously by CCIH and CCS, and was never employed at any time by Warden Meko or the DOC.

*Perkinson* is also distinguishable. In *Perkinson*, the plaintiff alleged that the plaintiff's employer, "CCS/Wellpath," conspired with the DOC to create a hostile and retaliatory work environment. On interlocutory appeal, the Kentucky Supreme Court determined that the circuit court properly denied the DOC's motion to dismiss the plaintiff's claim of retaliatory discharge based on sovereign immunity. In the matter before us, nothing in the record shows a conspiracy between CCIH and/or CCS and the DOC, and there are no immunity issues.

We find no manifest injustice on this issue, and thus no palpable error. *See* Kentucky Rules of Civil Procedure ("CR") 61.02; *Fraley v. Rice-Fraley*, 313 S.W.3d 635, 641 (Ky. App. 2010).

Appellant's second argument is that the Elliott Circuit Court erred in dismissing the DOC and Warden Meko from the case based on the court's finding that neither the DOC nor Warden Meko were Appellant's employers. This argument largely mirrors Appellant's first argument asserting joint employment liability. In this second argument, however, Appellant seeks to establish employer liability as to the DOC and Warden Meko in the context of her intentional infliction of emotional distress, interference with contract, and retaliation claims.

As noted above, however, the two unpublished Kentucky opinions relied on by Appellant do not support her claim that the DOC and Warden Meko were her joint employers for purposes of establishing employment liability. Nothing in the record can reasonably be construed as demonstrating that the DOC and Warden Meko were Appellant's employers.

Lastly, we will examine the Elliott Circuit Court's disposition of Appellant's claims of intentional infliction of emotional distress, interference with contract, and retaliation.[6] On the intention infliction of emotional distress claim, the court cited *Osborne v Payne*, 31 S.W.3d 911, 913-14 (Ky. 2000), which provides that the wrongdoer's conduct must be intentional or reckless; the conduct must be so outrageous and intolerable that it offends general standards of decency and morality; causation; and, resultant severe emotional distress. The Elliott Circuit Court determined that Warden Meko asking Appellant out for a drink, if it in fact occurred, was not so outrageous and intolerable as to cause severe emotional distress. Similarly, the court determined that Warden Meko's act of terminating Appellant's security clearance also did not offend general standards of decency and morality so as to cause severe emotional distress. These conclusions are supported by the record.

---

[6] The circuit court disposed of Appellant's intentional infliction of emotional distress claim and retaliation claim by way of a summary judgment order rendered on August 31, 2021, which was incorporated into the August 30, 2022 final judgment.

As to Appellant's claim of tortious interference with contract, in order to maintain a tortious interference with contract claim, a plaintiff must prove the following elements:

> (1) the existence of a contract; (2) [the defendant's] knowledge of the contract; (3) that [the defendant] intended to cause a breach of that contract; (4) that [the defendant's] actions did indeed cause a breach; (5) that damages resulted to [the plaintiff], and (6) that [the defendant] had no privilege or justification to excuse its conduct.

*Snow Pallet, Inc. v. Monticello Banking Co.*, 367 S.W.3d 1, 5-6 (Ky. App. 2012) (citation omitted).

In considering this issue, the circuit court examined the three separate incidents which occurred prior to the revocation of Appellant's security clearance: the giving of ChapStick to an inmate; the purchase of a honey bun for an inmate; and allowing an inmate to braid Appellant's hair. Though Appellant sought to characterize these incidents as either necessary or harmless, she did not dispute that they occurred. It is further undisputed that these incidents violated various provisions of the Corrections Policies and Procedures manual, which bar prison personnel from receiving or giving a gift to an offender, or from touching an offender outside the scope of what is reasonably necessary for the performance of one's duties. Further, former DOC Commissioner LaDonna Thompson testified as

to the necessity of these rules, which are aimed in part at preventing inmates from forming improper relationships with prison staff.

Based on the totality of the record, including Appellant's acknowledgement that each incident occurred, we conclude that the Elliott Circuit Court properly determined that the claim of tortious interference with contract could not prevail if the matter proceeded to trial. Appellant could not prove every element of *Snow Pallet, Inc.*, *supra*, particularly the last element requiring proof that Warden Meko was not justified in terminating Appellant's security clearance.

Lastly, Appellant argues that she was entitled to move forward on her claim of retaliation brought pursuant to KRS 344.280. To establish a *prima facie* case of retaliatory discharge, a plaintiff must show that 1) she engaged in an activity protected by KRS Chapter 344; 2) that the exercise of her civil rights was known by the defendant; 3) that the defendant took an employment action adverse to the plaintiff; and 4) that there was a causal connection between the protected activity and the adverse employment action. *Lindsey v. Board of Trustees of University of Kentucky*, 552 S.W.3d 77, 89 (Ky. App. 2018).

The Elliott Circuit Court first noted that, while KRS Chapter 344 does not expressly require proof that the alleged wrongdoer was a supervisor or employer, this requirement is implicit in the myriad of cases that the circuit court examined because only supervisors or employers can take adverse employment

action. Further, the circuit court found that even if KRS Chapter 344 applied to Warden Meko, Appellant could not prove that she engaged in a protected activity per the statute; that Warden Meko engaged in an adverse employment action; nor, that there was any causal connection between a protected activity and an adverse employment action.

Appellant seeks palpable error review on these issues. Again, we find no manifest injustice on these issues and thus no palpable error. CR 61.02; *Fraley*, *supra*. We also agree with the circuit court that even if KRS Chapter 344 applied to the DOC or Warden Meko, Appellant could not prove every element of the statute if the matter proceeded to trial. Accordingly, we find no error.

## CONCLUSION

For the foregoing reasons, we affirm the August 30, 2022 judgment of the Elliott Circuit Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Paul Croushore
Cincinnati, Ohio

BRIEF FOR APPELLEES
DEPARTMENT OF CORRECTIONS
AND JOSEPH MEKO:

Edward A. Baylous II
Frankfort, Kentucky

BRIEF FOR APPELLEE CORRECT
CARE SOLUTIONS, LLC:

Kathleen B. Wright
Griffin Terry Sumner
Louisville, Kentucky

BRIEF FOR APPELLEE
CORRECTCARE-INTEGRATED
HEALTH, INC.:

Kristeena L. Johnson
Lexington, Kentucky