**John Stephen TELEK, Appellant**

v.

**Samantha DAUGHERTY (now Bucher), Appellee.**

No. 2009–CA–001993–ME.

Court of Appeals of Kentucky.

Aug. 24, 2012.

Carl E. Knochelmann, Jr., Covington, KY, for Appellant.

Samantha Daugherty Bucher, Fort Thomas, KY, pro se.

Before COMBS, LAMBERT, and STUMBO, Judges.

LAMBERT, Judge:

John Stephen Telek has appealed from the Kenton Family Court's October 21, 2009, domestic violence order (DVO) granted to Samantha Bucher. John challenges the family court's jurisdiction to enter the DVO, the family court's impartiality, as well as the sufficiency of the evidence supporting the entry of the DVO. In the original opinion rendered December 17, 2009, this Court agreed with John that the family court lacked jurisdiction and reversed the DVO. On discretionary review, the Supreme Court reversed this holding and remanded the appeal to this Court to consider John's challenge to the sufficiency of the evidence. *Daugherty v. Telek,* 366 S.W.3d 463 (Ky.2012). Having now considered this argument, we conclude that the family court did not have a sufficient factual basis upon which to enter a DVO. Hence, we reverse.

John and Samantha were never married, but have a son in common, J.T., born August 16, 1997. John filed a custody action in Kenton County in 2000 (action No. 00–CI–00155). The present domestic violence action arose as a result of an incident on August 17, 2009, when Samantha went to pick up J.T. from football practice. In her domestic violence petition filed the next day, Samantha stated as follows:

At 7:30 pm, I attempted to pick up my son from football practice. Mr. Telek advised me that he was taking him home to his house, and that I could pick my son up at 8:30 pm. I reminded him that he was violating a court order and he stated "I wasn't found in contempt for that." As a [sic] stood by the passenger side door telling my son to come with me, Mr. Telek grabbed me by the wrist and yanked me. I told him to get his hands off me, and he shoved me out of the way. I yelled to a father of one of my son's teammates to help me. He stopped to see what was going on and Mr. Telek backed off. Mr. Telek had been sentenced to jail time for violating multiple court orders just hours earlier by Judge Mehling in Kenton Family Court. All three of my children witnessed the incident.

Kenton Family Court Judge Lisa Bushelman entered an emergency protection order (EPO) on August 18, 2009, restraining John from committing any further acts of abuse or threats of abuse and from any contact or communication with Samantha. The EPO also required John to remain 500 feet away from her and her family at all times. The EPO was to be effective until August 26, 2009, the date on which the hearing was scheduled. John received service of the EPO on the date of its entry.

The parties appeared before Judge Christopher Mehling (who is also the presiding judge in the custody action) on August 26, 2009, in accordance with the EPO. Joshua Crabtree, J.T.'s guardian *ad litem* (GAL) in the custody action, was not present that day, but had spoken with John's counsel prior to the court appearance. John's counsel reported that the GAL wanted to talk with J.T. about the incident and asked that the domestic violence issue be heard with issues pending in the custody action at the same time. The family court, in agreement with the suggestion that all matters be heard together, instructed the parties to get a date from Veronica for a hearing and stated that it

would reissue the EPO every two weeks until the hearing took place. Pursuant to this instruction, the family court reissued the EPO several times over the subsequent weeks.[1]

The family court ultimately held a hearing on the domestic violence petition on October 21, 2009. Samantha testified in accordance with her petition regarding what took place on the evening of August 17, 2009. At the end of football practice, when she and John were to exchange J.T., Samantha stated that John told her she could pick J.T. up at his house at 8:30 p.m. Samantha then "stood up" to John and went to his van to get J.T. She stated that John grabbed her arm and shoved her away with his body. Samantha told John to get his hands off of her. She then called to a friend's husband, whereupon John backed off and permitted her to take J.T. Samantha testified that while she had not been injured, she had been afraid.

John, on the other hand, disagreed with Samantha's version of events and testified that he did not grab her or shove her. Rather, he stated that Samantha grabbed his hand on the door handle of the van, and that he told her to "get off." In court, John explained that J.T. had to retrieve a change of clothes and his summer reading assignment for the first day of school the following day. John wanted Samantha to follow them to his home so that J.T. could do so. John denied having any intent to harm or scare Samantha, stating that he always tried to keep his distance from her.

Finally, the GAL briefly testified regarding his discussions with J.T. and J.T.'s therapist. The GAL stated that J.T. indicated nothing had occurred that day.

At the conclusion of the testimony, the family court found that "something happened," and in conjunction with that finding recognized that John continuously failed to follow its orders and tended to read orders in his favor. Specifically and upon John's request for specific findings, the court found that John had touched and pushed Samantha and that such behavior would continue in the future. Accordingly, the family court entered a DVO, made it effective for a period of three years, and restrained John from committing further acts of abuse or contacting Samantha. The court additionally required John to remain 500 feet away from Samantha and her family with the noted exceptions of child exchanges and events related to J.T.'s sports and school. This appeal follows.

On appeal, John presents two arguments. First, John argues that the family court lacked jurisdiction to hold a hearing and enter a DVO. The Supreme Court reversed our original opinion reversing on this issue, ruling instead that the family court did not lose jurisdiction to issue the DVO once the initial fourteen days had elapsed from the entry of the EPO and that it did not violate the time constraints

1. John filed a motion to dismiss the EPO, arguing that the EPO expired fourteen days after its original issuance date when no hearing had been held, so that the family court did not have jurisdiction to hold a hearing and consider the merits of the domestic violence petition. The parties argued the merits of this motion before Special Judge Steven Hayden, who deferred ruling on the motion to dismiss; we note that Judge Mehling subsequently denied the motion prior to the start of the DVO hearing. Also prior to the hearing, John filed a petition with this Court seeking a writ of prohibition to prevent Judge Mehling and Special Judge Hayden from enforcing orders relating to the repeated issuance of the EPO as well as to the restraints the EPO placed on his ability to attend J.T.'s school and sports functions. This Court granted limited intermediate relief regarding John's attendance at J.T.'s sports games and practices, but declined to grant any further relief. The petition was later denied as moot when the DVO that is the subject of this appeal was entered.

of Kentucky Revised Statutes (KRS) 403.740. Presently before this Court is John's second argument; namely, that there was an insufficient factual basis to support the entry of the DVO.[2]

■ Samantha, proceeding *pro se*, filed a responsive brief contesting John's assertions. In her brief, Samantha made reference to and attached a letter from J.T.'s therapist and mentioned a later ruling in the custody action. John has requested that this Court strike those references, along with any other references she made to matters outside of the record. We agree with John that Samantha is only permitted to cite and attach documents to her brief that are in the record, and therefore we shall only consider references to the certified record contained in Samantha's brief.

In *Caudill v. Caudill*, 318 S.W.3d 112, 114–15 (Ky.App.2010), this Court addressed the DVO process as well as an appellate court's review:

> Prior to entry of a DVO, the court must find "from a preponderance of the evidence that an act or acts of domestic violence and abuse have occurred and may again occur. . . ." KRS 403.750(1). The preponderance of the evidence standard is satisfied when sufficient evidence establishes the alleged victim was more likely than not to have been a victim of domestic violence. *Baird v. Baird*, 234 S.W.3d 385, 387 (Ky.App.2007). The definition of domestic violence and

abuse, as expressed in KRS 403.720(1), includes "physical injury, serious physical injury, sexual abuse, assault, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse, or assault between family members. . . ." The standard of review for factual determinations is whether the family court's finding of domestic violence was clearly erroneous. [Kentucky Rules of Civil Procedure (CR) ] 52.01; *Reichle v. Reichle*, 719 S.W.2d 442, 444 (Ky.1986). Findings are not clearly erroneous if they are supported by substantial evidence. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky.2003). "[I]n reviewing the decision of a trial court the test is not whether we would have decided it differently, but whether the findings of the trial judge were clearly erroneous or that he abused his discretion." *Cherry v. Cherry*, 634 S.W.2d 423, 425 (Ky.1982) (citation omitted). Abuse of discretion occurs when a court's decision is unreasonable, unfair, arbitrary or capricious. *Kuprion v. Fitzgerald*, 888 S.W.2d 679, 684 (Ky.1994) (citations omitted).

The Court went on to state:

> While "domestic violence statutes should be construed liberally in favor of protecting victims from domestic violence and preventing future acts of domestic violence[,]" *Barnett v. Wiley*, 103 S.W.3d 17, 19 (Ky.2003), "the construction cannot be unreasonable." *Id.* (cit-

---

**2.** Intertwined with this argument is John's contention that the family court is biased against him and should recuse itself from further action in the case due to its partiality. In the first opinion, this Court briefly addressed the bias issue, stating, "[w]hile our ruling on the previous issue decides the case as a whole, we shall briefly mention John's request that Judge Mehling be. required to recuse from further action in this case. Although our review of the videotaped record

does not support John's claims regarding Judge Mehling's alleged bias and prejudice against him or his attorney, we decline to address this issue further as it was not raised below." Because this issue was not raised below and because John did not apparently raise this issue before the Supreme Court, nor did the Supreme Court direct that we address it on remand, we shall not revisit the bias issue in the present opinion.

ing *Beckham v. Board of Education of Jefferson County,* 873 S.W.2d 575, 577 (Ky.1994)). Furthermore, we give much deference to a decision by the family court, but we cannot countenance actions that are arbitrary, capricious or unreasonable. *See Kuprion,* 888 S.W.2d at 684.

*Caudill,* 318 S.W.3d at 115.

■ As the Court in *Caudill* recited, the version of KRS 403.720(1) in effect at the time of the incident in this case defined "domestic violence and abuse" as "physical injury, serious physical injury, sexual abuse, assault, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse, or assault between family members or members of an unmarried couple[.]" And before a court may enter a DVO, it must find "from a preponderance of the evidence that an act or acts of domestic violence and abuse have occurred and may occur again[.]" KRS 403.750(1). *See Wright v. Wright,* 181 S.W.3d 49, 52 (Ky.App.2005) ("the Supreme Court of Kentucky [has] defined the preponderance standard as requiring that the evidence be sufficient to establish that the alleged victim 'was more likely than not to have been a victim of domestic violence.' ").

In his brief, John contends that the family court abused its discretion in entering the DVO without a sufficient factual basis to support it. Based upon our review of the record in conjunction with the statutory requirements and other case law, we must agree with John that the family court abused its discretion in entering the DVO.

In *Caudill, supra,* this Court held that the Pike Family Court did not have a sufficient basis to support the entry of a DVO. The family court, in its ruling, stated that it was granting the DVO "based on one occasion when Bart 'basically pushed [Kathryn] out of the way to enter the home.' " *Caudill,* 318 S.W.3d at 115. The lower court noted other instances, including Bart's visits to Kathryn's workplace (which the court described as irritating), but went on to state that there was no proof that he had threatened Kathryn or acted inappropriately at their children's school. This Court reversed the DVO, holding that there was not substantial evidence to meet the statutory definition of domestic violence and that at most "there was an unwanted touching[.]" *Id.* The Court held that the unwanted touching "alone does not satisfy the definition of domestic violence and abuse as stated in KRS 403.720(1)." *Id.*

In *Fraley v. Rice–Fraley,* 313 S.W.3d 635 (Ky.App.2010), this Court again reversed a DVO due to lack of evidence. In that case, the family court based its decision on the impact the opinions of a marriage counselor had on Gail, rather than upon any evidence that Dale had ever acted violently or threatened violent actions towards her. This Court held that the marriage counselor was the person who instilled fear in Gail, not Dale; also, no evidence existed that Dale had inflicted the fear of imminent physical injury upon Gail. Therefore, the family court abused its discretion in entering the DVO. *Id.* at 640.

In *Pasley v. Pasley,* 333 S.W.3d 446 (Ky.App.2010), this Court again reversed the entry of a DVO, holding that Ms. Pasley's emergency protection petition did not include any allegations of physical abuse or injury, or threats of abuse. She only stated that "she was unsure what Mr. Pasley would do and was afraid of him." *Id.* at 448. The Court's review of the record indicated that Ms. Pasley did not make any oral allegations of physical injury or abuse, or that she was in any fear of imminent injury. This Court held that the family court abused its discretion in entering the DVO.

In *Gomez v. Gomez*, 254 S.W.3d 838 (Ky.App.2008), this Court upheld the entry of the DVO, noting that the family court's "decision hinged on an assessment of the credibility of the witnesses." *Id.* at 842. The family court opted to believe the appellee's version of the events, after hearing from her, the appellant, and the appellant's girlfriend.[3] The family court had also heard testimony that the appellant had threatened the appellee in the past and "that she was fearful of him." *Id.* This Court held that the appellee established by a preponderance of the evidence that an act of domestic violence had occurred and may occur again, pursuant to the statutory definition. *Id.*

▮ Turning to the case before us, we must hold that Samantha failed to establish by a preponderance of the evidence that an act of domestic violence occurred, or may occur again, or that she was in fear of imminent domestic violence. The family court in this case was unable to articulate much more than that "something happened" and that John had touched and pushed Samantha. We cannot hold that this is sufficient in light of our holding in *Caudill* that Bart's action in pushing Kathryn out of the way to enter the house was not enough to establish that an act of domestic violence had occurred. John's actions appear more akin to the "unwanted touching" the *Caudill* Court mentioned, which standing alone would not meet the definition of domestic violence. The family court also based its decision on John's actions in the domestic case, stating that John failed to follow its orders in the other case and tended to interpret orders to his benefit. Neither of these faults of John is in any way tied to incidents of domestic violence and therefore cannot form the basis for the entry of the DVO.

For the foregoing reasons, the DVO entered October 22, 2009, is reversed, and this matter is remanded to the Kenton Family Court for dismissal of the DVO.

ALL CONCUR.

---

**3.** The opinion does not recite the factual basis for either the appellant's or the appellee's version of the events.