RENDERED: JUNE 10, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1144-ME

JASON BECKETT                                                                    APPELLANT

v.
APPEAL FROM FAYETTE CIRCUIT COURT
FAMILY COURT DIVISION
HONORABLE KATHY W. STEIN, JUDGE
ACTION NO. 21-D-00368-004

NUBIA BECKETT                                                                    APPELLEE

OPINION
REVERSING

** ** ** ** **

BEFORE: JONES, MAZE, AND TAYLOR, JUDGES.

TAYLOR, JUDGE: Jason Beckett appeals from the August 26, 2021, Domestic

Violence Order (DVO) of the Fayette Circuit Court, Family Court Division, sought

by his wife, Nubia Beckett, and entered on behalf of Nubia and the couple's three

minor children, A.M., age 15 years;[1] R.B., age 9 years; and M.B., age 4 years. The

---

[1] Nubia testified that Jason is not the biological father of the oldest child, A.M., but has raised him since a very young age.

order also granted custody of the children to Nubia and allowed for supervised visitation by Jason with the children at Greenhouse17 in Lexington, Kentucky. Because we hold that the family court's findings were unsupported by substantial evidence and that the family court abused its discretion, we reverse.

For context, we must summarize facts discerned from the record before us that occurred prior to the date Nubia filed the domestic violence petition at issue in this appeal. The parties have been in divorce proceedings since Nubia filed a petition for dissolution on or about April 1, 2021. On June 24, 2021, Nubia filed a domestic violence petition, alleging events that occurred the previous day (Fayette County Case No. 21-D-00368-003; referred to hereinafter as "Trailer -003").[2] The family court issued a summons only and a hearing was held on July 8, 2021. After the hearing, the family court entered an emergency protective order (EPO) in Trailer -003 and set a hearing for a DVO on August 12, 2021.

On August 2, 2021, Nubia went to Jason's home that he shares with his mother to pick up the children. Because we do not have the EPO entered in Trailer -003 before us, it is unclear why the parties were engaged in contact with one another following entry of the EPO in Trailer -003. Regardless, a

---

[2] The record indicates Trailers -001 and -002 were dismissed by agreement of the parties.

confrontation ensued and Nubia filed another petition for a DVO on behalf of

herself and the children, which stated:

> Petioner [sic] was very drunk. He almost broke my car
> window by punching it very hard. He was mad over the
> 4 [year] old starting pre-K. He curse [sic] at me in front
> of the two youngest. When he was done he went inside
> intiminating [sic] my 15 [year] old. I confronted him to
> never do that. He then proceeding [sic] on pushing me
> with his stomach [and] yelling with the children around.
> The officer file [sic] a JC3. My 15 [year] old said dad
> (Jason) has been mean to him [and] does not want to be
> around him. My 9 [year] old told the officer she's scare
> [sic] of dad because of his outburst with grandma [and]
> grandpa. He's been doing this for three days based on
> what my son stated. I am very scare [sic] of this outburst
> his [sic] having for me [and] the kids. Has [sic] of now
> he has supervised visitation with the children at his mom
> [sic]. He's so bad it's become harder [and] harder to do
> these visitation [sic]. The kids are tramatized [sic] by
> him.

This petition was filed as Fayette County Case No. 21-D-00368-004

("Trailer -004") and another EPO was issued even though an EPO was apparently

still active in Trailer -003. The family court held a hearing on August 26, 2021,

and both trailers were called. The family court heard testimony regarding events

that occurred on both June 23, 2021, (Trailer -003) and on August 2, 2021 (Trailer

-004). Nubia was represented by counsel and Jason appeared *pro se*. At the

conclusion of the hearing, the family court granted the DVO. This appeal

followed. Further facts will be developed as necessary.

-3-

We begin our analysis by noting that only Trailer -004 and the order entered on August 26, 2021, are before us on appeal. It is unclear from the record if a DVO was ever entered in Trailer -003, even though the hearing on August 26 purportedly addressed both. We note that Jason filed a designation of record pursuant to Kentucky Rules of Civil Procedure (CR) 75.01 that included Trailer -003, but it was not included in the record that is currently before us, nor was the case appealed.[3]

On appeal, Jason argues that the family court abused its discretion by finding that an act of domestic violence occurred and may occur again, in contravention of Kentucky Revised Statutes (KRS) 403.720(1). He asserts that there was no factual basis for entry of the DVO. For the reasons stated, we agree.

Domestic violence is governed by KRS Chapter 403, which provides that the trial court may enter a DVO "if [it] finds by a preponderance of the evidence that domestic violence and abuse has occurred and may again occur[.]" KRS 403.740(1).[4] "Domestic violence and abuse" is defined as:

> [P]hysical injury, serious physical injury, stalking, sexual abuse, strangulation, assault, or the infliction of fear of imminent physical injury, serious physical injury, sexual

---

[3] In his brief to this Court, Jason Beckett states that Trailer -003 was dismissed. Nubia Beckett disagrees. The record before us gives no indication that Trailer -003 was dismissed.

[4] We note that the Kentucky legislature amended Kentucky Revised Statutes in 2022 and the relevant provisions were renumbered.

abuse, strangulation, or assault between family members
or members of an unmarried couple[.]

KRS 403.720(1). "The preponderance of the evidence standard is met when sufficient evidence establishes that the alleged victim 'was more likely than not to have been a victim of domestic violence.'" *Baird v. Baird*, 234 S.W.3d 385, 387 (Ky. App. 2007) (quoting *Commonwealth v. Anderson*, 934 S.W.2d 276, 278 (Ky. 1996)).

Our review of a trial court's decision to grant or deny a DVO "is not whether we would have decided it differently, but whether the court's findings were clearly erroneous or that it abused its discretion." *Gomez v. Gomez*, 254 S.W.3d 838, 842 (Ky. App. 2008). We will not set aside findings of fact unless they are clearly erroneous, or unsupported by substantial evidence. CR 52.01; *Moore v. Asente*, 110 S.W.3d 336 (Ky. 2003). "[F]indings of fact are clearly erroneous only if they are manifestly against the weight of the evidence." *Frances v. Frances*, 266 S.W.3d 754, 756 (Ky. 2008) (citation omitted). Because the trial court is in the best position to judge the credibility of the evidence, we will not substitute our opinion for that of the trial court with regard to the weight given to certain evidence, including the testimony of witnesses. CR 52.01; *B.C. v. B.T.*, 182 S.W.3d 213 (Ky. App. 2005). Additionally, an abuse of discretion occurs only where the court's decision is

"unreasonable, unfair, arbitrary or capricious." *Caudill v. Caudill*, 318 S.W.3d 112, 115 (Ky. App. 2010).

The evidence presented during the hearing on August 26 regarding alleged domestic violence against the children was composed entirely of hearsay testimony. The hearing began with Nubia testifying regarding events that occurred on June 23, 2021 (*i.e.*, events that were the subject of Trailer -003). When asked to recount events of that day, Nubia testified:

> I was going to dinner with friends and it was [Jason's] timeshare with the kids. On my way to dinner his mom called and said, "I need you to come get the kids or I'm gonna call CPS to get them." And she wouldn't tell me why. So when I showed up, there was already police officers there. And, uh, he, and he I don't know if he was intoxicated or if he was just going crazy, I guess. He had the little one, the four-year-old, in the basement and wouldn't let him go upstairs. Our daughter, our nine-year-old was upstairs and she was just happy that I came to pick them up. And I really don't understand what happened, what made him go crazy or whatever the incident was.

Video Record at 11:53:05, August 26, 2021.

The family court then admitted into evidence the police report from the incident (the JC3). Nubia's counsel then pointed the family court to the last page of the JC3 which he argued showed that Jason's mother was the one who called the police and filed the JC3. The last page states, "[t]he listed complainant stated her adult son who lives with her with his two children refuses to care for his

children and uses narcotics instead. Complainant stated she is having to care for the children because her son refuses to." Neither Jason's mother nor the responding police officer were called to testify. Nubia also testified that M.B. ended up staying with Jason on the date of the incident after she left. Nubia did not testify to witnessing or experiencing any act of domestic violence by Jason when she arrived at his home on June 23, 2021. Nor did she testify that she or the children were in fear of an act of domestic violence.

Nubia's testimony then turned to the events surrounding Trailer -004 that took place on August 2, 2021. She stated that when she went to pick up the children, Jason was angry because she had enrolled M.B. in a pre-K program within Fayette County Schools without discussing it with him. Her version of events was that Jason came running to her car while the kids were inside the car and proceeded to bang and shake the window and curse at her. After testifying that the children were in her vehicle, she then stated that Jason went back into his home where she saw him get face-to-face with the oldest child.[5] According to her testimony, Nubia then ran into the house to get between Jason and the oldest child and told Jason to never speak to her child that way again. The parties then went back outside where Jason allegedly raised his arms into the air and pushed Nubia

_____

[5] Nubia's testimony was unclear regarding the location of the children. She testified they were in the vehicle, but then that A.M. was still inside Jason's home. Jason testified that A.M. was in Nubia's vehicle the entire time.

with his stomach. It was then that an off-duty police officer, who is a neighbor, came over to the residence. Nubia took the children home and testified that she filed another JC3, but it was not presented as evidence.[6] From there, Nubia's testimony becomes laden with hearsay. For example, she stated A.M. told her, "Mom, Dad's been mean to me for three days, he's been bullying me." R.B. allegedly stated, "I'm scared of Dad." When asked if she was scared of Jason, Nubia replied:

> After that incident, more so, yes. Especially for the kids because they're not, they don't like it, you know. They voiced their opinion. [M.B.] is little, he doesn't know, but the older two do. Um, my oldest said he does not want to be around him right now. [A.B.] hasn't said she doesn't want to be around him, she just said she's scared.

Video Record at 11:58:20, August 26, 2021.

Jason, who was *pro se*, did not object to the hearsay evidence. When asked what relief she was requesting, Nubia stated that she knew the children:

> [M]iss their dad [Jason], but I wouldn't mind visitations for a little bit somewhere that's not his mom's house and someone can actually watch. I want full custody because he is not capable. He is not capable of taking care of these kids.

---

[6] The statements in the petition on August 2, 2021, combined with Nubia's testimony, were somewhat confusing in that the petition seemed to indicate the neighbor who was an off-duty officer and came to Jason's home filed a JC3. However, Jason testified that the off-duty officer simply instructed Nubia to leave and did not file a report. Rather, Nubia contacted police after she left with the children and at that point a JC3 was filed.

Video Record at 11:58:52, August 26, 2021.

The family court then engaged in an exchange with Nubia's counsel, who informed the court that the Cabinet for Health and Family Services was currently conducting an investigation and that they were waiting on a drug test from Jason. Counsel made it clear that Jason had not refused a drug screen, only that they were still awaiting the results of the test.[7]

When Nubia was finished presenting proof, Jason was not afforded an opportunity to cross-examine Nubia, but rather, the family court stated, "[y]ou've heard her testimony. Please tell me what you have to say in response." Jason began telling his version of events that differed factually from Nubia's version. For example, Jason stated that he, not his mother, called the police to his home on June 23, 2021. He also testified, as concerned the August 2 incident, that the oldest child was already in the car when he knocked on the car window, and Nubia did not enter his home to come between them, but that she was in fact the aggressor because she "ran up and got in [his] face."

At the conclusion of the hearing, the family court judge stated she was entering the DVO "based upon the JC3 that has been placed into evidence and the testimony that [Nubia] gave regarding the situation when she arrived at [Jason's]

---

[7] No representative from the Cabinet for Health and Family Services testified at the hearing. Other than counsel's unsworn statements, there was no evidence presented that the Cabinet was conducting an investigation.

mother's residence." The JC3 clearly referred to events pertaining to Trailer -003 that occurred on June 23, 2021. It is unknown if "the situation" when Nubia arrived at Jason's mother's house referred to events related to Trailer -003, Trailer -004, or some combination of both.

To the extent that the family court relied on evidence pertaining to the events of June 23, 2021, in issuing the DVO in Trailer -004, we must conclude that the court abused its discretion in this regard. Nubia's knowledge of events prior to her arrival at Jason's home was based entirely on inadmissible hearsay from Jason's mother. And, the officer who filled out the JC3 was not called to testify at the hearing. Nubia did not testify that upon her arrival at Jason's house, she witnessed an act of domestic violence against the children. Likewise, she did not testify that Jason perpetrated an act of domestic violence against her. By allowing Nubia to testify about statements made to her by the children and Jason's mother, the family court allowed testimony in the record that constitutes inadmissible hearsay. *See Allen v. Gueltzow*, 535 S.W.3d 333, 335 (Ky. App. 2017). A DVO petition is subject to the same evidentiary standards as other forms of evidence. *Rankin v. Criswell*, 277 S.W.3d 621, 625 (Ky. App. 2008). Unless an exception applies, hearsay contained in a petition should not be considered as evidence. *Id.* Nubia's testimony was mostly inadmissible hearsay that the family court should

not have considered in making its decision. *See G.E.Y. v. Cabinet for Hum. Res.*, 701 S.W.2d 713, 715 (Ky. App. 1985).[8]

The family court further abused its discretion at the hearing by allowing the JC3 report from June 23, 2021, into evidence. Pursuant to the Kentucky Rules of Evidence (KRE) 803(8), a police report is not exempt from hearsay, unless it is offered for an admissible purpose. *See also Kerr v. Commonwealth*, 400 S.W.3d 250 (Ky. 2013). The family court indicated that it was relying on the contents of the JC3 in its decision to enter the DVO (*i.e.*, it was erroneously admitted into evidence to show the truth of the matter asserted). As noted, neither the police officer or Jason's mother were called to testify at trial. Thus, not only was the JC3 itself hearsay, but the statement contained therein from Jason's mother constituted hearsay within hearsay and was also inadmissible evidence.

Hearsay excluded, the family court was left with very little evidence to consider. Even if the court accepted Nubia's version of events on August 2, 2021, as true, the only substantive evidence was Nubia's testimony that Jason

---

[8] We are cognizant that Jason, acting *pro se* at the hearing, did not object to the introduction of the hearsay evidence and testimony. However, Kentucky Rules of Civil Procedure (CR) 61.02 clearly permits this Court to review unpreserved error and reverse the family court upon a showing of manifest injustice. *See Martin v. Commonwealth*, 207 S.W.3d 1 (Ky. 2006). Based upon our review of the meager record in this appeal, including the August 26 hearing video, we must conclude that a palpable error occurred under CR 61.02.

banged on her car window, cursed, got face-to-face with A.M., and pushed against her with his stomach.

> While "domestic violence statutes should be construed liberally in favor of protecting victims from domestic violence and preventing future acts of domestic violence[,]" *Barnett v. Wiley*, 103 S.W.3d 17, 19 (Ky. 2003), "the construction cannot be unreasonable." *Id.* (citing *Beckham v. Board of Education of Jefferson County*, 873 S.W.2d 575, 577 (Ky. 1994)).  Furthermore, we give much deference to a decision by the family court, but we cannot countenance actions that are arbitrary, capricious or unreasonable.  *See Kuprion* [*v. Fitzgerald*, 888 S.W.2d 679, 684 (Ky. 1994)].

*Caudill*, 318 S.W.3d at 115.

This Court has previously held that a husband pushing his wife out of the way to enter the home did not constitute domestic violence.  *Id.* at 115.  This Court has similarly held that a father's grabbing of mother's wrist and shoving her did not rise to the level of domestic violence.  *See Telek v. Daugherty*, 376 S.W.3d 623, 628 (Ky. App. 2012).  In light of those holdings, and given the totality of the circumstances, we cannot say there was sufficient evidence to support the family court's finding that an act of domestic violence occurred in this case.  Such a finding was clearly erroneous as Nubia failed to establish by a preponderance of admissible evidence that an act of domestic violence occurred against her or the children.

The record before this Court shows that the parties are engaged in contentious divorce and custody proceedings. Nubia filed the first DVO petition (Trailer -001) the day after she filed the petition for dissolution of marriage. While that case was ultimately dismissed and is not before us, we note that this is the fourth petition that has been filed since initiation of dissolution proceedings.[9] Further, a large portion of the testimony at the August 26, 2021, DVO hearing focused not on whether an act of domestic violence had occurred, but instead pertained to Jason's business ventures and finances. It was revealed that Jason owns and operates numerous sober-living facilities and recovery-based services throughout the Lexington, Kentucky, area. The family court wanted to know where the facilities were located; the hours of operation; the names of the various entities; when Jason obtained state approval; whether Nubia has access to financial and other information regarding Jason's businesses; and whether the Cabinet for Health and Family Services uses Jason's facilities. While such evidence may be relevant to the divorce action, it is totally irrelevant to whether an act of domestic violence occurred on the date in question. This Court has previously held:

> [T]he impact of having an EPO or DVO entered improperly, hastily, or without a valid basis can have a devastating effect on the alleged perpetrator. To have the legal system manipulated in order to "win" the first battle of a divorce, custody, or criminal proceeding, or in order

---

[9] The record before us shows that Trailer -002 was filed by Jason against Nubia on behalf of the children, but was also dismissed by agreement of the parties.

-13-

to get "one-up" on the other party is just as offensive as domestic violence itself.

*Rankin*, 277 S.W.3d at 624-25.

Accordingly, the August 26, 2021, DVO of the Fayette Family Court is reversed and set aside.

MAZE, JUDGE, CONCURS.

JONES, JUDGE, DISSENTS AND DOES NOT FILE SEPARATE OPINION.


BRIEF FOR APPELLANT:                BRIEF FOR APPELLEE:

Derrick L. Harris                   Carl D. Devine
Lexington, Kentucky                 Lexington, Kentucky