RENDERED: NOVEMBER 7, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1462-ME

WAEL I. GHANIM                                          APPELLANT


v.
APPEAL FROM FAYETTE FAMILY COURT
HONORABLE LIBBY G. MESSER, JUDGE
ACTION NO. 24-D-01117-001


MAY A. GHANIM-MOUSTAFA AND
J.G., A MINOR CHILD                                     APPELLEES


OPINION
AFFIRMING IN PART AND
REVERSING AND REMANDING IN PART

** ** ** ** **

BEFORE: CALDWELL, McNEILL, AND TAYLOR, JUDGES.

CALDWELL, JUDGE: Wael I. Ghanim ("Wael") appeals from a domestic

violence order ("DVO") entered against him on behalf of May A. Ghanim-

Moustafa ("May") and J.G.,[1] a minor child. We affirm the DVO entered against

---

[1] To protect the privacy of the minor child, we shall not refer to the child by name. *See also*
Kentucky Rules of Appellate Procedure ("RAP") 5(B)(2) ("Initials or a descriptive term must be

him on behalf of May but reverse the "no violent contact" provision entered on behalf of J.G. and remand to delete this provision from the DVO.

## FACTS

In August 2024, May filed a petition for an order of protection against Wael. In the petition May alleged Wael had been aggressive and physically and financially abusive since she had "sexually separated" from him in November 2022 after discovering his infidelity.[2] She also alleged Wael engaged in controlling behavior including cutting off the internet and electricity when she was working remotely. May further alleged Wael was verbally insulting her and her sick father daily. May stated she was subjected to verbal assaults every day although physical assault or abuse had stopped after she called the police multiple times. May also alleged that Wael brought his mother to live in their home.

May's petition stated she felt unsafe in her home as she felt Wael would try to hurt her. May also alleged Wael said he would do everything he could to take everything from her and that she had offered to get a divorce, which he refused to do. May noted the parties had one minor child living in the home.

_____

used instead of a name in cases involving juveniles, allegations of abuse and neglect, termination of parental rights, mental health, and expungements.").

[2] May's trial testimony indicated she and Wael had slept in separate rooms for the last couple of years although they continued to live in the same house at the time the petition was filed.

The family court issued an emergency protective order ("EPO") shortly after the petition was filed. The EPO required that Wael vacate the couple's home, stay at least 500 feet away from May, and stay at least 500 feet away from the home. The EPO also provided for May to have temporary custody of the minor child.

The case proceeded to a DVO hearing in November 2024. Both Wael and May were represented by counsel. A guardian *ad litem* ("GAL") appeared on the minor child's behalf. The parties' two adult children, a son who attended graduate school out-of-state and a daughter who attended college locally and still lived at home, testified on May's behalf. Wael's mother testified on his behalf. Both May and Wael also testified. The minor child did not testify.

May testified that she and Wael, who were both originally from Egypt, had entered into an arranged marriage about twenty-five years ago. She testified that Wael had physically assaulted her about twenty times over the years. May also testified to Wael's engaging in controlling behavior including his taking away her phone and car keys and sometimes cutting off her internet and electricity. She recounted his pushing or shoving her numerous times and his throwing things at her and threatening to take everything from her. She testified the last physical altercation occurred that April, when he pinned her down to the floor to get her phone while the minor child watched and screamed in the same room. May

-3-

testified her adult daughter heard the screams of May and the minor child and came downstairs to intercede.

The adult daughter testified to hearing the screams and coming downstairs, where she saw her father holding her mother down and she heard the youngest child crying. The daughter testified to Wael's grabbing her arm, which hurt, when she tried to intercede to get her father off her mother. She also testified to recording the incident after she was able to retrieve her mother's phone. The recording was played at the hearing. The daughter testified to seeing her father throw things at her mother. When Wael's counsel remarked that the recording also showed May throwing something at Wael, the adult daughter admitted this was true but said May was throwing the object back in self-defense.

The adult daughter also testified to calling her brother to tell him of the situation so that he could call their father to urge him to let their mother alone. Similarly, the adult son testified to being called by his sister to intercede and to his calling his father. He also testified to having seen his father physically assault his mother on multiple occasions, most memorably on a couple of occasions during his childhood and more recently in about 2021. Both adult children stated they were concerned for their mother's safety. The minor child did not testify.

May admitted in her testimony that she did not file the petition for an order of protection until August 2024 despite the last incident of physical assault

(when Wael pinned her down on the floor) occurring in April 2024. She described previously calling the police multiple times to de-escalate incidents, although she had previously opted not to press charges. May stated that she decided to file the petition in August 2024 because she was becoming increasingly afraid. She stated Wael was verbally abusing her and would pray out loud for her to die in the presence of their children, which she interpreted as a threat and an indication of his extreme hatred for her. She admitted to throwing a shoe back at Wael after he threw it at her during an argument.

In contrast to the testimony of May and the adult children, Wael and his mother (who sometimes lived with the family for months at a time) testified to there being no violence in the home. They also said May was mentally ill and lied and taught the children to lie. Wael also testified that he believed May filed the petition to financially extort him. Wael asserted May had withdrawn a large amount of money from their joint account and given it to her father. He also stated that May's attorney said May would withdraw the petition for a good settlement.

Wael also testified that he had found out that he and May were not legally married. However, on cross-examination, he did not deny that he had sponsored May as his spouse for American citizenship and that he had signed documents such as deeds and tax returns which stated he was married to May.

Although the written petition indicates it was filed solely on May's behalf, May orally requested that the court grant some protection for the minor child. May admitted that Wael had not physically harmed the child, although she thought the child had been frightened by Wael's behavior such as pinning May down. She did not seek to prevent Wael's having contact with the child.

According to testimony (including that of the parties' adult son), Wael violated the EPO on two occasions by entering the house when May was not there to see the child. Some testimony indicated Wael initially thought he was allowed to come to the house when May was not there and that he stopped coming to the house after his son pointed out the EPO forbade Wael from coming to the house.

At the end of the hearing, the judge stated the court would be issuing a three-year no contact order on May's behalf. The court found that May had proven by a preponderance of the evidence that domestic violence had occurred and may occur again. The court specifically noted that it did not find Wael's testimony credible, in part because Wael denied being married to May despite his sponsoring her for citizenship as his spouse and signing deeds and tax returns indicating May was his wife. The court also ordered "no violent contact" on behalf of the child for three years.

Wael filed a timely appeal. On appeal, Wael argues that the family court erred in issuing the DVO against him. Further facts will be described as needed in our analysis.

## ANALYSIS

KRS[3] 403.740(1) provides that a court may issue a domestic violence order if, after conducting a hearing in accordance with KRS 403.730, the "court finds by a preponderance of the evidence that domestic violence and abuse has occurred and may again occur[.]" "The preponderance of the evidence standard is satisfied when sufficient evidence establishes the alleged victim was more likely than not to have been a victim of domestic violence." *Johnston v. Johnston*, 639 S.W.3d 428, 431 (Ky. App. 2021) (quoting *Caudill v. Caudill*, 318 S.W.3d 112, 114 (Ky. App. 2010) (internal quotation marks omitted)).

### Standards of Review

We review the entry of a DVO for whether the trial court's finding of domestic violence was an abuse of discretion. Our review of the trial court's factual findings is limited to whether they were clearly erroneous. A trial court's factual determination is not clearly erroneous if it is supported by substantial evidence, which is evidence of sufficient probative value to induce conviction in the minds of reasonable people.

---

[3] Kentucky Revised Statutes.

*Johnston*, 639 S.W.3d at 431 (citations omitted). We review the lower court's rulings on whether to admit evidence for abuse of discretion. *Abdur-Rahman v. Peterson*, 338 S.W.3d 823, 828 (Ky. App. 2011). On the other hand, we review the family court's application of the law to the facts *de novo*. *Buddenberg v. Buddenberg*, 304 S.W.3d 717, 720 (Ky. App. 2010).

**No Reversible Error in Family Court's Handling of Wael's Attempts to Offer Evidence of Settlement Negotiations to Show May Had an Ulterior Motive in Filing a DVO Petition**

Wael argues that the family court erroneously excluded evidence of settlement negotiations which he asserts would show May was willing to dismiss the DVO petition in exchange for a monetary settlement.

Wael testified that he asked May, through her attorney, to withdraw the petition and that May's attorney told him May was willing to do that if May got a good settlement. May's attorney objected, stating that settlement negotiations were not disclosable. Wael's attorney asserted there were exceptions to the rule forbidding disclosure of settlement negotiations, and he suggested Wael's testimony should be admitted because it was relevant to show motivation.

The family court stated it would allow in what Wael had already testified to for this limited purpose (*i.e.*, motivation). However, the family court judge also stated that she did not think further specific questions about settlement negotiations after the petition was filed were appropriate. Wael asserts this

-8-

amounted to the court's essentially sustaining May's objection. Wael's attorney did not elicit further testimony about settlement negotiations, nor did he submit an avowal or an offer of proof about settlement negotiations.

Wael contends on appeal that the family court erroneously excluded his testimony about settlement negotiations. He cites KRE[4] 408, which states:

> Evidence of:
>
> (1) Furnishing or offering or promising to furnish; or
>
> (2) Accepting or offering or promising to accept a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

May concedes on appeal that KRE 408 allows for the admission of evidence of settlement negotiations for reasons such as motivation or bias. However, May contends that the family court did not wholly exclude, but properly

---

[4] Kentucky Rules of Evidence.

limited, evidence of settlement negotiations pursuant to KRE 403 (which allows for the exclusion of otherwise relevant evidence for purposes including avoiding undue delay and the "needless presentation of cumulative evidence.").  Both Wael and May correctly state in their briefs that evidence of settlement negotiations may be admitted for certain purposes other than proving liability on or the invalidity of a claim pursuant to KRE 408.  (We note the parties' counsel did not explicitly cite KRE 408 during the recorded hearing.)

Despite Wael's argument that the family court erroneously excluded testimony about settlement negotiations, the family court **admitted** into evidence Wael's statement—that May's attorney told him she would drop the petition for a good settlement—for the limited purpose discussed by his lawyer, motivation. And though the family court orally indicated its disinclination to permit further specific questioning about settlement negotiations following the filing of the petition, preservation may be questionable since Wael's attorney did not offer an avowal or offer of proof of further specific information concerning settlement negotiations.  *See* KRE 103(a)(2).

Even assuming the issue is preserved, the family court did not categorically exclude all evidence about settlement negotiations but instead admitted Wael's statement about the alleged offer to withdraw the petition for the limited purpose of showing motivation.  Moreover, we discern no abuse of

discretion in the court's expressing its disinclination to allow further specific questions about settlement negotiations which followed the filing of the petition. This is especially true because the family court has discretion to exclude otherwise relevant evidence to avoid "undue delay" and "needless presentation of cumulative evidence." KRE 403.

As May points out, the trial court allowed Wael to testify about his perception that May was financially motivated to file the petition for a DVO and that she had, according to him, lied and transferred joint assets to her father without consulting him. Having allowed Wael to testify to this perception of May's financial motivation in detail and to briefly testify to the alleged offer to withdraw the petition for a good financial settlement, the family court was well within its discretion to exclude further questioning about settlement negotiations to avoid the needless presentation of cumulative evidence and undue delay.

In sum, we discern no reversible error in the family court's handling of this evidentiary issue.

**No Reversible Error in Family Court's Finding Wael's Testimony Less Credible than May's Based, in Part, on Wael's Testimony that the Parties Were Not Legally Married**

Next, Wael argues the family court erred in finding him to be less credible than May based on what he asserts is irrelevant testimony about whether Wael and May were legally married. Wael asserts in his brief that there was no

-11-

formal wedding ceremony and that he and May were in different countries when the marriage occurred or "when the arrangement was allegedly finalized between family members." He also contends he recently discovered the marriage may be considered invalid under Egyptian law, making it also invalid in the United States in his estimation.[5]

Wael also correctly emphasizes that whether he and May were legally married had no bearing on whether domestic violence had occurred or would occur again. May does not disagree with this assertion. Kentucky law provides the same protection from domestic violence for members of married couples and for members of unmarried couples who share a child, live together, or formerly lived together. *See generally* KRS 403.720 (defining such terms as *domestic violence* (specified acts occurring between family members or members of an unmarried couple), *family member* (which includes a spouse), and *member of an unmarried couple* (who must share a child with, live with, or have formerly lived with another member of the unmarried couple for purposes of DVO proceedings)).

Wael suggests that since issues about the legality of the couple's marriage were irrelevant to determining whether domestic violence had occurred

---

[5] Wael cites no legal authority to support his allegation that the marriage was invalid under Egyptian law or other law in his appellate briefs, and we decline to independently research any such issues—especially since the validity of the DVO does not depend on the validity of the marriage as we discuss herein. We express no opinion on whether the marriage was valid.

-12-

or would occur again, the family court erred in finding him less credible due to his testimony about believing the marriage was invalid.

We disagree. Though questions about the validity of the marriage do not affect whether domestic violence occurred or may occur again, this does not necessarily mean that the family court could not properly consider Wael's testimony denying the marriage was valid, as one factor among others, in assessing his credibility. As May points out, the family court did not find Wael less credible based solely on his expressing doubts about the legality of the couple's marriage. The family court's written findings also note that Wael denied that any violence occurred and testified that the DVO proceedings were a ruse and that May taught the children to lie.

Both Wael's and May's appellate briefs refer to oral findings with citations to portions of the videorecording of the DVO hearing. For example, May points to the judge's orally expressing at the end of the recorded hearing that she found Wael less credible because his testimony that the DVO proceedings were a ruse based on May's lying and teaching the children to lie suggested that he did not take part in raising the children.

However, neither May nor Wael cite to the family court's written findings set forth by calendar order on pages 53-54 of the record. And we note the

family court did not expressly incorporate its oral findings in the DVO or in its accompanying written findings.

We cannot consider oral findings which are not incorporated into the family court's written judgment (the DVO and written findings). *Castle v. Castle*, 567 S.W.3d 908, 916 (Ky. App. 2019) (quoting *Kindred Nursing Centers Ltd. Partnership v. Sloan*, 329 S.W.3d 347, 349 (Ky. App. 2010)). *See also Smith v. McCoy*, 635 S.W.3d 811, 816-17 (Ky. 2021). Therefore, we focus on the family court's written findings.

The family court's written findings note Wael's testimony denying that any violence occurred and asserting that May raised the children to lie and had filed the petition for a DVO as a ruse to obtain financial advantages. These written findings also note Wael's denial that May was legally his spouse, despite his admitting to making representations that they were married on documents including deeds, income tax returns, and May's citizenship request. Next, the court's written findings state: "This calls into question his [Wael's] credibility and gives significant weight to her [May's] testimony that he has attempted to financially control her through her finances and citizenship claiming she has no rights to anything."

The family court's mention of these other factors (including Wael's denial that any violence occurred) in its written findings shows it did not doubt

-14-

Wael's credibility based solely on his testimony about the alleged invalidity of the couple's marriage. Moreover, we must extend due deference to the family court's unique opportunity to judge the credibility of the witnesses and to weigh the evidence before it. *See generally* CR[6] 52.01; *Jones v. Jones*, 617 S.W.3d 418, 424-25 (Ky. App. 2021); *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003).

We discern no clear error, abuse of discretion, or misapplication of the law in the family court's finding Wael less credible based in part on his denying the marriage was valid despite his previously indicating May was his spouse on important documents such as deeds and tax returns. In sum, we discern no reversible error in the family court's referring to Wael's testimony about suspecting the marriage was legally invalid as one reason for finding him less credible than May.

### Family Court's Factual Findings Were Supported by Substantial Evidence and it Did Not Abuse its Discretion or Misapply Legal Authority in Determining that Domestic Violence Had Occurred and May Occur Again and in Issuing a DVO for May

Wael emphasizes that both he and his mother, who frequently visited the home, testified to a lack of violence there. However, even assuming the testimony of May and the adult children was true, Wael contends in his brief: "the allegations do not rise to the level of domestic violence. Moreover, the parties are

---

[6] Kentucky Rules of Civil Procedure.

now separated and getting divorced, so the prospect of any altercation occurring again are virtually non-existent."

We construe his argument as an attack on the family court's findings that domestic violence had occurred and may occur again. *See* KRS 403.740(1).

First, we address Wael's assertions about the family court's findings regarding May. Wael contends there was a lack of allegation or evidence of physical injury or sexual abuse, assault, or the infliction of fear of imminent physical injury, sexual abuse, or assault toward her. *See* KRS 403.720(2)(a) (defining *domestic violence and abuse*). He claims that May's testimony about being afraid of him and unsure what he would do is not sufficient to support a finding of domestic violence and issuance of a DVO, citing *Pasley v. Pasley*, 333 S.W.3d 446 (Ky. App. 2010). He asserts there must be allegations of injury, assault, or the threat of injury to support a finding of domestic violence and to issue a DVO. *See id.* at 448-49 (Noting lack of evidence or allegations of physical injury or threats of physical injury—instead, petitioner simply stated she was unsure what respondent would do and she was afraid of him—so issuance of DVO was an abuse of discretion).

However, May did not simply testify to being afraid of Wael or unsure what he would do. She also testified to his physically assaulting her numerous times during their marriage, his throwing things at her, his pinning her

down on the floor on at least one occasion, his controlling behavior such as cutting off power and internet, and his praying out loud for her to die which she interpreted as a threat and an indication of his extreme hatred toward her. Moreover, much of her testimony was corroborated by that of her adult children, who also recounted witnessing Wael's acts of physical aggression toward May.

The family court has the unique opportunity to determine witness credibility and weigh the evidence and may make reasonable inferences from the evidence. *Williford v. Williford*, 583 S.W.3d 424, 428-29 (Ky. App. 2019). Thus, based on our review of the record, we reject Wael's assertion that there were no allegations or evidence of injury, assault, or threats of injury of assault to support the family court's finding that domestic violence occurred.

Our precedent clearly establishes that one does not necessarily have to show a physical injury to obtain a DVO because domestic violence is defined in KRS 403.720 as also including infliction of an imminent fear of physical injury. *See, e.g.*, *Hamilton v. Milbry*, 676 S.W.3d 42, 46 (Ky. App. 2023); *Hohman v. Dery*, 371 S.W.3d 780, 782-83 (Ky. App. 2012); *Williford*, 583 S.W.3d at 429-30.

Moreover, despite precedent cited by Wael which may suggest that isolated instances of pushing or shoving or "mere unwanted touching" are not

enough to constitute domestic violence,[7] there was evidence of repeated instances of physically aggressive behavior and threats by Wael towards May. Specifically, May presented evidence that Wael repeatedly pushed or shoved her in addition to pinning her down to get her phone on one occasion and making verbal threats to take everything away from her and praying out loud for her to die. May even testified to Wael's leaving marks on her body from acts of physical aggression, although she admitted she did not show these marks to anyone because of her religious beliefs requiring modesty.

In sum, there was no lack of allegations or evidence that domestic violence occurred. The family court's factual findings are supported by substantial

---

[7] *See, e.g.*, *Telek v. Daugherty*, 376 S.W.3d 623, 624, 628 (Ky. App. 2012) (evidence of respondent's grabbing and shoving petitioner during heated exchange of child held not to be enough to support a finding domestic violence occurred); *Caudill*, 318 S.W.3d at 115 (evidence of respondent's pushing petitioner out of the way to get into house held not to be enough to support a finding of domestic violence having occurred).

We decline to address the unpublished Kentucky appellate opinions cited by Wael as these are not binding and there is sufficient published Kentucky precedent to guide our resolution of this issue. *See* RAP 41(A). And though we are certainly aware that unpublished Kentucky appellate opinions are not binding authority, we note neither Wael's nor May's briefs comply with the requirement that one must state that such unpublished opinions are not binding authority when citing such unpublished opinions for our consideration. *See* RAP 41(A)(4). We encourage counsel to carefully review RAP 41(A) before citing unpublished opinions for our consideration in the future.

Also, our review of the record shows that, other than the exceptions we discussed herein, Wael has generally preserved his arguments for appellate review. However, his brief does not contain preservation statements for each of his arguments, as required by RAP 32(A)(4). We have leniently elected to not impose sanctions for the deficiencies, but caution counsel that such leniency is unlikely to be extended in the future.

evidence and the family court did not abuse its discretion or misapply the law to the facts in finding that domestic violence had occurred.

Moreover, we reject Wael's argument that the family court erred in finding that domestic violence may occur again because Wael and May are separated and pursuing a divorce.[8] Unfortunately, it is not unheard of for violent or threatening behavior to occur during divorce proceedings or thereafter despite a couple's no longer residing together. *See, e.g.*, *Baird v. Baird*, 234 S.W.3d 385 (Ky. App. 2007). Despite Wael's suggestions that domestic violence could not occur again because the parties are not living together and could avoid having contact with each other by communicating about visitation or parenting time arrangements through counsel, we discern no reversible error in the family court's finding that domestic violence may occur again.

The family court obviously inferred that domestic violence may occur again based on the evidence of multiple physically aggressive acts in the past as well as testimony about Wael's angry outbursts and his praying aloud for May to die. Moreover, there was substantial evidence to support this reasonable inference, especially considering the deference we must extend to the family court's assessments of the weight and credibility of the evidence presented. *See Holt v.*

---

[8] The record of any such dissolution proceeding is not before us.

-19-

*Holt*, 458 S.W.3d 806, 812-13 (Ky. App. 2015) (given petitioner's testimony about the respondent's "angry outbursts" and "harassing communications" in addition to multiple acts of physical aggression, the evidence was sufficient to support a reasonable inference that the respondent "had previously engaged in acts of domestic violence against James [petitioner] and that her conduct caused James to fear that she would engage in future acts of domestic violence against him, if not restrained" and there was no reversible error in finding that domestic violence occurred and may occur again).

In sum, we discern no clear error, abuse of discretion, or misapplication of the law in the family court's finding that domestic violence may occur again—despite the separation and any pending divorce proceedings. There is no reason to reverse the "no contact" DVO issued on behalf of May.

Next, we address the allegations of error about the no violent contact provision entered on behalf of the minor child.

### We Reverse the "No Violent Contact" Provision on the Child's Behalf, and Remand for Entry of an Amended DVO Deleting This Provision

While we perceive no error in the family court's issuing the DVO on May's behalf, the DVO's "no violent contact" provision on behalf of the minor child presents more troublesome issues. Wael accurately points out the GAL stated the child denied ever having been physically harmed by her father, and the

GAL opined that it was unnecessary to issue a DVO on the child's behalf. We are also unaware of any evidence of Wael's making verbal threats directed at the child.

On the other hand, we are aware the GAL orally noted at the hearing that the child witnessed the April 2024 incident (referring to testimony about Wael's pinning May down to the floor). The GAL also orally stated that the child appeared fearful of her father—although the GAL submitted that he was not sure whether she was fearful due to the incident or due to not seeing Wael for a while.

We also recognize that May presented evidence of Wael's engaging in acts of physical aggression toward May in the child's near presence—for example, his pinning May to the floor in the kitchen while the child watched and screamed according to the testimony of May and the adult daughter. And we have previously stated in a non-binding unpublished opinion: "Acts of domestic violence committed in close proximity to the child may be sufficient to establish a risk of imminent harm to the child."[9]

---

[9] *Mullins v. Swarts*, No. 2016-CA-000464-ME, 2016 WL 7406694 at *2 (Ky. App. Dec. 22, 2016) (unpublished) (citing *Crabtree v. Crabtree*, 484 S.W.3d 316, 318-19 (Ky. App. 2016)). In *Mullins*, we affirmed a DVO issued on behalf of the petitioner and the minor child where the petitioner had been shot by the respondent in the respondent's home while the child was in another room in the home. 2016 WL 7406694 at *1-3.
In *Crabtree*, we affirmed the issuance of a DVO based on evidence of respondent's threatening to kill himself in front of petitioner and their children. 484 S.W.3d at 317-19. *See also generally J.D.Y. v. B.H.D.*, No. 2007-CA-001519-ME, 2008 WL 4182050 (Ky. App. Sep. 12, 2008) (unpublished) (affirming DVOs and findings of domestic violence towards both petitioner and minor children based on evidence that the respondent threatened to commit suicide in the presence of the petitioner and the children despite erroneous admission of hearsay testimony about alleged sexual abuse).

In carefully considering this issue, we wanted to make sure that the child's GAL (who represented her in the DVO proceedings) received notice of this appeal and had an opportunity to brief this issue. However, it came to our attention that the certificates of service on Wael's and May's appellate briefs indicate that copies of the briefs were not served on the GAL although the briefs' captions indicate the child is also an appellee.

The child automatically became a party to the appeal if she was a party to the family court case. *See* RAP 2(A)(2) ("Upon timely filing of the notice of appeal from a final and appealable order on all claims in an action, all parties to the proceedings from which the appeal is taken, except those who have been dismissed in an earlier final and appealable order, shall be parties before the appellate court."). Although the written petition was ostensibly filed solely on May's behalf, the GAL was appointed to represent the child in this domestic violence proceeding. The order appointing the GAL states the child was not a listed party or alleged victim, but that the GAL was being appointed because May requested protection for the child or other relief which might affect the child. Ultimately, the family court ordered some protection for the child by including a

"no violent contact" provision in the DVO on the child's behalf, although the family court did not forbid Wael from having any contact with the child.[10]

This Court perceived the child to be a party to the family court domestic violence case, as the GAL is listed as a participant in the appeal on our distribution list.[11] Moreover, the record on appeal does not indicate the GAL was dismissed or that his representation of the child terminated after the DVO petition was resolved by the family court.

After it came to this Court's attention that Wael's and May's briefs were not served on the child's GAL based on their respective certificates of service, this Court issued an order requiring Wael and May to serve the GAL with copies of their briefs within fourteen days of the order's date. Our order gave the GAL an opportunity to file a brief within six weeks of the order's date, although

---

[10] This Court has previously reviewed DVOs with similar provisions forbidding violent contact but not all contact. *See generally Bissell v. Baumgardner*, 236 S.W.3d 24, 28 (Ky. App. 2007); *Walker v. Walker*, 520 S.W.3d 390, 391 (Ky. App. 2017). However, the parties in those cases apparently did not raise any issues about the DVO provisions solely prohibiting violent contact. And the no violent contact provisions in those cases were not entered on behalf of minor children, but solely on behalf of adult petitioners.

[11] Wael filed the notice of appeal *pro se* despite having been represented by counsel in the DVO proceedings. His notice of appeal appears deficient in some respects. For example, it does not contain a certificate of service, nor does it identify the date of the decision from which he appealed or the court to which he was appealing. *See generally* RAP 2(B). Though the notice of appeal was filed *pro se*, Wael's appellate counsel entered his appearance approximately one month later. No amended notice of appeal was filed. Though the lack of certification of service is concerning, the deficiencies in the notice of appeal do not affect our jurisdiction over this appeal since the notice of appeal was timely filed. RAP 2(A)(2).

we did not require the GAL to file a brief on the child's behalf. Ultimately, the GAL did not file a brief within the deadline provided by this Court.

In addition to the GAL declining to brief this issue, we note that May's brief (entitled as a Brief for Appellees—indicating it was filed on behalf of both May and the minor child) does not specifically address Wael's allegations of error regarding the no violent contact provision on behalf of the minor child. No one has responded to the assertion of error in Wael's appellate briefs regarding the no violent contact provision entered on the child's behalf or truly filed a brief on behalf of the child.

RAP 31(H)(3) states:

> If the appellee's brief has not been filed within the time allowed, the court may: (a) accept the appellant's statement of the facts and issues as correct; (b) reverse the judgment if appellant's brief reasonably appears to sustain such action; or (c) regard the appellee's failure as a confession of error and reverse the judgment without considering the merits of the case.

While we carefully review issues about the entry of the no violent contact provision since this affects a minor child and do not simply summarily reverse this provision, the lack of argument on the child's behalf in favor of this provision could be interpreted as a confession that this provision was entered in error. And, while May challenged Wael's statement of facts and issues in some respects, she did not dispute in her brief Wael's assertion that no evidence was

-24-

presented of his physically harming the child or threatening to harm the child. Nor did the GAL file a brief disputing the lack of evidence of actual or threatened physical harm to the child. And again, the GAL had not sought a DVO or for any particular provision to be included in a DVO on the child's behalf.

Moreover, while the family court noted the presentation of evidence of Wael's pinning May down in front of the minor child and this causing the child to become upset in its written findings, the family court did not specifically find that the child's witnessing this incident inflicted a fear of injury on the child. *See* KRS 403.720(2)(a). Nor did the family court more generally find that domestic violence towards the child had occurred or may occur again. *See* KRS 403.740(1)(a). (In contrast, the family court clearly found that domestic violence had occurred toward May and may occur again. "For Petitioner [May] against Respondent [Wael], in that it was established by a preponderance of the evidence that domestic violence and abuse has occurred and may occur again.").

Thus, given the lack of request for the no violent contact provision on behalf of the child, the lack of a finding of domestic violence towards the child, and the lack of counterarguments challenging Wael's assertions of error in this regard, we conclude it is necessary to reverse the entry of this no violent contact provision on the child's behalf. On remand, the family court shall enter an amended DVO deleting this no violent contact provision on behalf of the child.

To be clear, we do not believe that Wael is entitled to engage in any sort of violent contact with the minor child or anyone else. Nonetheless, the entry of the no violent contact provision regarding the child was erroneous under the facts and circumstances of this case (including the GAL's not seeking any type of protection via a DVO for the child and the lack of finding of domestic violence directed toward the child). And given the various possible interpretations of what *violent contact* may mean and the serious consequences of violating a DVO, *see Wright v. Wright*, 181 S.W.3d 49, 52 (Ky. App. 2005) (violation of DVO can result in immediate arrest); we cannot say that this error was harmless. So, under the unique facts and circumstances of this case, it is necessary to reverse the no violent contact provision and to remand to the family court for entry of an amended DVO deleting this provision.

Further arguments in the appellate briefs which are not discussed herein have been determined to lack merit or relevance to our resolution of this appeal. Moreover, we decline to discuss any other non-binding unpublished precedent cited in the appellate briefs because adequately published precedent exists to guide our consideration of the issues in this appeal. *See generally* RAP 41(A).

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the DVO entered for May, but we REVERSE the no violent contact provision entered on behalf of the minor child and REMAND the case to the family court for entry of an amended DVO deleting this no violent contact provision on behalf of the minor child.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Lauren R. Brooke
Rhey Mills
Richmond, Kentucky

BRIEF FOR APPELLEE MAY A. GHANIM-MOUSTAFA:

Adele Burt Brown
Lexington, Kentucky